## McKNIGHT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10121.

Circuit Court of Appeals, Fifth Circuit.

April 29, 1942.

R. B. Cannon, of Fort Worth, Tex., for petitioner.

Warren F. Wattles and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The great question here is whether the embezzler of the money or mercantile paper of a bank, who is unable to restore

it, makes a taxable gain thereby. Subsidiary questions are as to the precise time the gain, if any, is realized, and as to what deductions are allowable against it.

The petitioner is the administrator of Thomas Spruance, whose estate has assets of only $6,000, and liabilities of $95,000 besides the claim of First State Bank of Arlington, Texas, hereafter discussed. Spruance for several years before his death had been an officer of the Bank, active in its affairs. On April 8, 1937, during an examination of the Bank, shortages began to appear, and one or more were admitted by him. He took his own life on April 12. Thereafter the audit of the Bank revealed shortages and misapplications attributed to Spruance amounting to over $135,000, during the years 1934, 1935, 1936 and 1937. Those of the first three years are in controversy here. The administrator admitted a liability in that amount, subject to credit for about $37,000 remaining in an account to which many of the misapplications were traced, and $25,000 recovered from Spruance's official bond. The administrator did not concern himself with the particular years in which the misapplications may have occurred, as none were barred. The Commissioner of Internal Revenue adopted the claim thus formulated without any independent examination, and expressly on the basis of it distributed the total embezzlements of $135,000 over the four years and assessed additional income taxes accordingly. The Board of Tax Appeals, 43 B.T.A. 221, sustained the Commissioner in treating the misapplications as taxable income, but deducted the $37,000 in the above mentioned special account because it was recovered by the Bank, but refused to deduct the $25,000 paid by the surety on the bond because the surety was subrogated to that extent to the Bank's claim with no reduction in the amount Spruance received. It also refused to charge the wife of Spruance with any tax.

■ We find insuperable difficulties in the way of the conclusion that one who embezzles funds entrusted to him realizes gain and receives taxable income thereby. Gain is very broadly defined, as to its sources, in the Revenue Acts, Revenue Act 1934, Sect. 22; Revenue Act 1936, Sect. 22(a), 26 U.S.C.A. Int.Rev.Code § 22. The classic definition of income is: "'Gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. It does not appear here what the embezzler did with what he took, whether he realized any profit from its use or conversion, or even got any enjoyment by spending it. All we know is it is gone and he is left insolvent. Was gain realized by the act of taking? We think not. He got no title, void or voidable, to what he took. He was still in possession as he was before, but with a changed purpose. He still had no right nor color of right. He claimed none. This the Board seems to concede, and finds that the gain arose on his using the funds 'for his own purposes, whatever they where. The time of using, and not the time of taking, then would determine the incidence of the tax, and about that nothing is known. But when the entrusted fund is used, or even when taken with the purpose of dishonest use, the law immediately and absolutely fixes upon the embezzler the duty to account for and to repay the value of what is taken. No action or election by the owner is necessary. By the taking the embezzler incurs an equivalent debt as surely as if he had borrowed with the consent of the owner. The first takings are, indeed, nearly always with the intention of repaying, a sort of unauthorized borrowing. It must be conceded that no gain is realized by borrowing, because of the offsetting obligation. This would be true even though at the time there was no intention to repay. It seems to us that the same thing is true of each act of embezzlement. Commissioner v. Turney, 5 Cir., 82 F.2d 661.[1]

■ But it is suggested that if a long period elapses without discovery, during which the embezzled funds are enjoyed or made way with, and the embezzler becomes insolvent, so he cannot on discovery be made to restore them, there has been practical gain. If so, it is the insolvency that causes the gain, and its date determines the incidence of the tax. If so, also, a borrower who becomes insolvent similarly realizes gain, but no one has ever thought a bankrupt could be taxed on the debts from which he obtained a discharge; and the doctrine of forgiven debts, sometimes giv-

---

[1] The dissent was not from the principle of law announced, but went on the fact contention that the money was paid to and received by Turney under the claim that it was his own.

ing rise to gain, has never been extended to insolvent persons. We cannot think that discovery of Spruance's embezzlement and his insolvency in 1937 made taxable gain of that which had not been such before.

■ Moreover, the direct result of such a doctrine would be that the United States would assert a preferential claim for part of the dishonest gain, to the direct loss and detriment of those to whom it ought to be restored. If the sum were large enough, the United States might take half. We do not believe the income tax laws are intended to raise any such competition. True it is that a taxpayer, solvent or insolvent, may not set up the unlawfulness of the business in which he has made gain to defeat taxation. Thus of the bootlegger, United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037; of the gambler, Christian H. Droge v. Commissioner, 35 B.T.A. 829; the grafter, Chadick v. United States, 5 Cir., 77 F.2d 961. It may be true that one who grows rich by systematic pilferings in his business which cannot be traced and recovered may realize taxable gain; but here the takings were large, and under a system of bookkeeping that made discovery and the demand for recovery eventually certain. All that was taken was taken from the Bank, which stands here asking for restoration of what belongs to it. There is doubt as to exactly when and how it was taken, but none as to the true owner; or of the complete want of any right to take. The Bank, rather than the United States, ought to have what is left.

The case of National City Bank v. Helvering, 2 Cir., 98 F.2d 93, is much relied on, where the secret profits of the president and general manager in handling the corporation's business, for which his corporation might in equity demand an account, were taxed. The case is not like this one. Profits had really been made; nothing was embezzled; the profits, invested in bonds, prima facie belonged to the president; and he had legal title to the bonds. The corporation had a mere equitable right, if it elected to do so, to ask that the profits be turned over to it. Matters so stood during the tax year. Likewise usurious interest which has not been reclaimed by the debtor has been held taxable as income to the usurer, for he has this profit under a claim of right and the debtor may never seek to recover it. Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122.

Even a bribe paid in respect to a public contract has been treated as taxable income, Chadick v. United States, 5 Cir., 77 F.2d 961, but there the money was not even recoverable by the payer. The rule is announced in North American Oil Consolidated v. Burnet, Commissioner, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * If in 1922 * * * the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year." But in that case there were real profits—not embezzled funds—and a real dispute as to who was entitled to them. None of these cases controls this one.

■ Our attention is called to the decision in Kurrle v. Helvering, 8 Cir., 126 F.2d 723, decided since this case was argued, where embezzled funds and the profits made by using them were taxed to the embezzler. We agree that the profits made by using embezzled funds are income and taxable as such, though possibly recoverable by the owner of the funds; but we think no taxable gain arises by the embezzlement itself.

The Board ran into a further difficulty in that Spruance was married, and under the community law of Texas "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife." Revised Civil Statutes of Texas, Art. 4619, Vernon's Ann.Civ.St. art. 4619. No one contends the embezzled money was separate property. The wife was not taxed with her half of the gain found to have been realized during the tax years by Spruance, the reason given being that he had a bare possession and no title to the embezzled funds and so had "acquired" nothing. We agree that he acquired nothing, but think the logical result is that no gain can be taxed to him either. If there were gain it would under the law of Texas accrue equally to husband and wife. Spruance could be taxed with only half of it.

It is demonstrable that most of the items formulated in the claim of the Bank against Spruance were not in themselves embezzlements, but falsifications of the Bank's books, or the use of bonds belonging to customers, to cover takings from the funds of the Bank at previous times. Thus the first item, a deposit by a customer of $14,-000, which was not entered to the depositor's credit but was dispersed in credits to several other accounts, represents no taking at that time which could be gain to Spruance. The money went into the assets of the Bank, probably to replace some taken at a previous but unknown time. So also of the numerous items when the bonds of customers left in the vault for safekeeping were put among the assets of the Bank to cover some shortage there. Except $4,000 of Liberty Bonds which Spruance sold and used the money, he got nothing from his handling of any of the bonds. Indeed, since they never left the Bank, it is to be presumed they were all returned to their owners. The transactions about them cannot be treated as gains to Spruance as of the date thereof. These and numerous other false transactions which were not embezzlements are only evidence that some prior embezzlement existed to be covered up. But whether the evidence is sufficient to identify the tax years in which embezzlements occurred, and on whom is the burden of proof, are questions we need not decide, as we think no taxable gain arose from them. Nor need we decide whether the surety's payment of $25,000 would be a credit.

The judgment is reversed and a recomputation of the tax directed, excluding alleged gains from embezzlement.