**MOORE v. THOMAS, Collector of Internal Revenue.**

**No. 10396.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 24, 1942.

612

J. P. Jackson, of Dallas, Tex., for appellant.

Clyde O. Eastus, U. S. Atty., of Dallas, Tex., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Wm. B. Waldo, Sp. Assts. to Atty. Gen., for appellee.

Before HUTCHESON and McCORD, Circuit Judges, and KENNERLY, District Judge.

HUTCHESON, Circuit Judge.

The suit was for tax refund. The claim was that moneys set up on its books as "attorney-in-fact fees" and reported by taxpayer as taxable income in its tax returns for the years 1935, 1936 and 1937, were not in fact such fees and were, therefore, not income, and the taxes, paid on such returns, were recoverable as taxes overpaid. The defendant, joining issue, denied that the taxes in question were erroneously assessed and collected. Tried on a stipulation of facts and the testimony of one witness for plaintiff, a certified public accountant,[1] there were findings of fact and

[1] This showed: that the taxpayer, a corporation, was during each of the years in question, acting as attorney-in-fact for a reciprocal group known as Casualty Underwriters under a subscription agreement entered into pursuant to Arts. 5024–5030, Texas Civil Statutes; that by the terms of the agreement taxpayer, as attorney-in-fact, received subscribers' funds and deposited them in a bank account opened by it for them, checks on such funds to be drawn by the attorney-in-fact alone; that the agreement authorized the attorney-in-fact to pay out of the funds subscribers' proportion of the cost of securing, issuing and exchanging insurance, including all claims and demands. A provision of the agreement was that in consideration for its services, "our attorney-in-fact shall deduct for itself not to exceed 10 percent of all moneys received on dues as a result of this agreement" and it further provided "our attorney-in-fact shall at all times maintain the premium and loss reserve required by law and shall forego any or all of said 10 percent when such funds shall prove inadequate". During the years in question the attorney-in-fact through its officers would pay out of the funds subscribed by the subscribers the cost of issuing policies, including the salaries and necessary office expense and would pay underwriter losses. The premium and loss reserves required by law were not maintained in adequate amounts in any of the years involved. Taxpayer, in its income tax returns, reported as "attorney-in-fact fees", for 1935 $13,597.02, for 1936, $28,504.60 and for 1937 $24,912.46. During all the taxable years in question, the corporation was insolvent, and the books were in such condition that the officers of the corporation must have known that they were being fraudulently kept and that false entries were being made in them. The moneys drawn by the taxpayer from the subscribers' funds as "attorney-in-fact fees" for the years in question were disbursed for income tax and for salaries, commissions, loans and dividends to its stockholders and officers. Only the principal officers and stockholders of the company were dishonest. Part of the stockholders and officers were ignorant of the fraud that was going on. The moneys paid out in dividends were paid to innocent, as well as dishonest, stockholders. There was no proof as to the extent in each of the years in question the reserve was short, none that the claim of taxpayer to the moneys in question had not been asserted under a claim of right, none that any claim had been made by the subscribers for the repayment of any of the sums.

a judgment for the defendant, and plaintiff has appealed. Here, insisting that his proof showed that the moneys taken by the taxpayer and reported as income were not in fact such but were the results of misappropriation or embezzlement of its subscribers' funds, appellant urges that our decision in McKnight v. Com'r, 5 Cir., 127 F.2d 572, requires a reversal. Appellee, insisting that the record does not show this but on the contrary shows that all of the moneys taken and reported as income were taken under a claim of right, urges that not McKnight v. Comm., but North American Oil Consolidated v. Burnett, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93, Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122, Chicago, R. I. & P. R. Co. v. Com'r, 7 Cir., 47 F.2d 990, Board v. Com'r, 6 Cir., 51 F.2d 73, control the decision here. We agree with appellee. Appellant's reliance on McKnight's case will not at all do. That, as the carefully written opinion points out, was a case of special circumstances. It was not intended to be, it was not, in conflict with the rule announced in North American Oil Co. v. Burnett and correctly applied in National City v. Helvering. What was absent in McKnight's case, an appropriation under a claim of right, was present in those two cases and is present here. The fact of which appellant seeks to make so much, that its officers, in asserting taxpayer's claim to the attorney-in-fact fees, acted with the corrupt motive of securing their distribution to themselves, is without bearing. The income of these officers and their title to the disbursed funds is not in question. What is in question is income claimed, appropriated and returned as income by taxpayer under a contract giving it a general right to deduct as "attorney-in-fact fees" 10 percent of all moneys received, a right limited only by a provision that it should forego some, or all, of the 10 percent to the extent that it fails to adequately maintain the premium and loss reserve required by law. This provision is not self acting. Compliance with it requires action on the part of the attorney-in-fact. It might have been, and, from all that appears, it was, waived. Besides the proof does not at all show the extent to which in each year in question there was an inadequacy, and, therefore, the extent of foregoing required. Such a record leaves no doubt that the moneys received by the taxpayer as its own under a claim of right and without restriction as to their disposition are none the less income to it in the year received because its right to them may be challenged and it may have to pay back their equivalent. The rule, making such moneys taxable as income in the year actually received rather than placing them in suspense until the issue in regard to the right to them is determined and then taking them into account for tax purposes on the basis of the finally ascertained result, is a practical one based on the settled taxing practice of an annual accounting. Under that settled practice, it is important only to determine whether the moneys in question were claimed and treated by the taxpayer as its earnings, and therefore, taxable as income to it. Of first importance to the determination of whether the moneys in question are taxable as income to the taxpayer in the year in which they were received is a determination, not only of the circumstances under which the taxpayer took the moneys and how it used them, but as to the intention and understanding under which they were paid to and received by it. The decisions make it clear that moneys received by the taxpayer are treated as his earnings and are taxed to him as income in that year when the taxpayer by his conduct has affirmed that they are, because under the taxing system adopted, it is the reasonable and practical thing to accept his view. Under the rule they establish, the evidence in this case leaves in no doubt that whatever the ultimate liability of taxpayer to its subscribers for the funds in question be, or may have been, they must, for tax purposes, be taken as being what it has claimed them to be, its own.

The judgment is right. It is affirmed.