## COMMISSIONER OF INTERNAL REVENUE *v.* WILCOX ET AL.

No. 163.   Argued January 8, 1946.—Decided February 25, 1946.

*Ralph F. Fuchs* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson* and *Muriel S. Paul.*

*William E. Davis* argued the cause for respondents. With him on the brief was *George B. Thatcher.*

Opinion of the Court by MR. JUSTICE MURPHY, announced by MR. JUSTICE RUTLEDGE.

The sole issue here is whether embezzled money constitutes taxable income to the embezzler under § 22 (a) of the Internal Revenue Code.[1]

The facts are stipulated. The taxpayer was employed as a bookkeeper by a transfer and warehouse company in Reno, Nevada, from 1937 to 1942. He was paid his salary promptly each month when due, it not being the custom to allow him to draw his salary in advance. In June, 1942, the company's books were audited and it was discovered for the first time that the taxpayer had converted $12,748.60 to his own use during 1941.[2] This amount was

---

[1] 26 U. S. C. § 22 (a).

[2] The sum of $10,147.41 was embezzled during 1942 but that amount is not in issue in this case.

composed of miscellaneous sums of money belonging to the company which he had received and collected at various times in his capacity as bookkeeper. He failed to deposit this money to the credit of the company. Instead he pocketed and withdrew payments in cash made to him by customers, neglecting to credit the customers' accounts or the company's accounts receivable with the funds received.

The taxpayer lost practically all of this money in various gambling houses in Reno. The company never condoned or forgave the taking of the money and still holds him liable to restore it. The taxpayer was convicted in a Nevada state court in 1942 of the crime of embezzlement. He was sentenced to serve from 2 to 14 years in prison and was paroled in December, 1943.

The Commissioner determined that the taxpayer was required to report the $12,748.60 embezzled in 1941 as income received in that year and asserted a tax deficiency of $2,978.09. The Tax Court sustained the Commissioner but the court below reversed. 148 F. 2d 933. We granted certiorari because of a conflict among circuits as to the taxability of embezzled money.[3]

Section 22 (a) of the Internal Revenue Code defines "gross income" to include "gains, profits, and income derived from . . . dealings in property . . . growing out of the ownership or use of or interest in such property; also from . . . the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The question thus is whether the wrongful acquisition of funds by an embezzler should be included in the statutory phrase "gains or profits and

---

[3] The decision below is in accord with *McKnight* v. *Commissioner*, 127 F. 2d 572 (C. C. A. 5), but is in conflict with *Kurrle* v. *Helvering*, 126 F. 2d 723 (C. C. A. 8). See also *Boston Consolidated Gas Co.* v. *Commissioner*, 128 F. 2d 473, 476–477 (C. C. A. 1, concurring opinion).

income derived from any source whatever," thereby constituting taxable income to the embezzler.

The Commissioner relies upon the established principle that orthodox concepts of ownership fail to reflect the outer boundaries of taxation. As this Court has stated, tax liability "may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis." *Burnet* v. *Wells,* 289 U. S. 670, 678. See *Helvering* v. *Clifford,* 309 U. S. 331; *Helvering* v. *Horst,* 311 U. S. 112. Applying that rule to this case, the Commissioner urges that the act of appropriating the property of another to one's own use is an exercise of a major power of ownership even though the act is consciously and entirely wrongful. As against all the world except the true owner the embezzler is the legal owner, at least while he remains in possession. The money or property acquired in this unlawful manner, it is said, should therefore be treated as taxable income to the wrongdoer under § 22 (a). We cannot agree.

Section 22 (a) is cast in broad, sweeping terms. It "indicates the purpose of Congress to use the full measure of its taxing power within those definable categories." *Helvering* v. *Clifford, supra,* 334. The very essence of taxable income, as that concept is used in § 22 (a), is the accrual of some gain, profit or benefit to the taxpayer. This requirement of gain, of course, must be read in its statutory context. Not every benefit received by a taxpayer from his labor or investment necessarily renders him taxable. Nor is mere dominion over money or property decisive in all cases. In fact, no single, conclusive criterion has yet been found to determine in all situations what is a sufficient gain to support the imposition of an income tax. No more can be said in general than that all relevant facts and circumstances must be considered. See Magill, Taxable Income (1945).

For present purposes, however, it is enough to note that a taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain. Without some bona fide legal or equitable claim, even though it be contingent or contested in nature, the taxpayer cannot be said to have received any gain or profit within the reach of § 22 (a). See *North American Oil* v. *Burnet*, 286 U. S. 417, 424. Nor can taxable income accrue from the mere receipt of property or money which one is obliged to return or repay to the rightful owner, as in the case of a loan or credit. Taxable income may arise, to be sure, from the use or in connection with the use of such property. Thus if the taxpayer uses the property himself so as to secure a gain or profit therefrom, he may be taxable to that extent. And if the unconditional indebtedness is cancelled or retired, taxable income may adhere, under certain circumstances, to the taxpayer. But apart from such factors the bare receipt of property or money wholly belonging to another lacks the essential characteristics of a gain or profit within the meaning of § 22 (a).

We fail to perceive any reason for applying different principles to a situation where one embezzles or steals money from another. Moral turpitude is not a touchstone of taxability. The question, rather, is whether the taxpayer in fact received a statutory gain, profit or benefit. That the taxpayer's motive may have been reprehensible or the mode of receipt illegal has no bearing upon the application of § 22 (a).

It is obvious that the taxpayer in this instance, in embezzling the $12,748.60, received the money without any semblance of a bona fide claim of right. And he was at all times under an unqualified duty and obligation to repay the money to his employer. Under Nevada law the crime of embezzlement was complete whenever an appro-

priation was made; [4] the employer was entitled to replevy the money as soon as it was appropriated [5] or to have it summarily restored by a magistrate.[6] The employer, moreover, at all times held the taxpayer liable to return the full amount. The debtor-creditor relationship was definite and unconditional. All right, title and interest in the money rested with the employer. The taxpayer thus received no taxable income from the embezzlement.

This conclusion is unaltered by the fact that the taxpayer subsequently dissipated all of the embezzled funds in gambling houses. The loss or dissipation of money cannot create taxable income here any more than the insolvency or bankruptcy of an ordinary borrower causes the loans to be treated as taxable income to the borrower. See *McKnight* v. *Commissioner*, 127 F. 2d 572, 573–574. In each instance the taxability is determined from the circumstances surrounding the receipt and holding of the money rather than by the disastrous use to which it is put. Likewise, the fact that a theft or loan may give rise to a deductible loss to the owner of the money does not create income to the embezzler or the borrower. Such deductions, lacking any necessarily corresponding relationship to gains and being a matter of legislative grace, fail to demonstrate the existence of taxable income.

Had the taxpayer used the embezzled money and obtained profits therefrom such profits might have been taxable regardless of the illegality involved.[7] Or had his

---

[4] *State* v. *Trolson*, 21 Nev. 419, 32 P. 930.

[5] Nevada Compiled Laws (1929) § 8681; *Perkins* v. *Barnes*, 3 Nev. 557; *Studebaker Co.* v. *Witcher*, 44 Nev. 468, 199 P. 477.

[6] Nevada Compiled Laws (1929) §§ 11243–11246.

[7] See *Johnson* v. *United States*, 318 U. S. 189; *United States* v. *Sullivan*, 274 U. S. 259; *Caldwell* v. *Commissioner*, 135 F. 2d 488; *Chadick* v. *United States*, 77 F. 2d 961; *National City Bank* v. *Helvering*, 98 F. 2d 93. See also *Mann* v. *Nash*, [1932] 1 K. B. 752; *Southern* v. *A. B.*, [1933] 1 K. B. 713.

employer condoned or forgiven any part of the unlawful appropriation, the taxpayer might have been subject to tax liability to that extent. But neither situation is present in this proceeding and we need not explore such possibilities. Sanctioning a tax under the circumstances before us would serve only to give the United States an unjustified preference as to part of the money which rightfully and completely belongs to the taxpayer's employer.

The Tax Court's determination that the embezzled money constituted taxable income to the embezzler, a result in accord with its prior decisions on the issue,[8] involved a clear-cut mistake of law. The court below was therefore justified in reversing that judgment. Cf. *Commissioner* v. *Scottish American Co.*, 323 U. S. 119; *Dobson* v. *Commissioner*, 320 U. S. 489; *Trust of Bingham* v. *Commissioner*, 325 U. S. 365.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, dissenting.

By holding in this case that embezzled funds do not constitute a taxable gain to the embezzler under the Internal Revenue Code, I believe the Court misinterprets the Code. That interpretation is contrary to the established administrative construction of the Code and to what appears to be the intent of § 22 (a) as disclosed by its legislative history. Section 22 (a) expressly includes in the net income of a taxable person "gains or profits and

---

[8] See *Estate of Spruance* v. *Commissioner*, 43 B. T. A. 221, reversed *sub nom. McKnight* v. *Commissioner*, 127 F. 2d 572; *Kurrle* v. *Commissioner*, Prentice-Hall 1941 B. T. A. Memorandum Decisions, par. 41,085, affirmed 126 F. 2d 723. The administrative interpretation is to the same effect as the Tax Court's decisions. G. C. M. 16572, XV-1 Cum. Bull. 82 (1936).

income derived from any source whatever." 26 U. S. C., § 22 (a). It is difficult to imagine a broader definition. This Court has said of this section, "The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories." *Helvering* v. *Clifford,* 309 U. S. 331, 334.

The legislative history of the section demonstrates the congressional intent to tax not merely "lawful" gains but all gains lawful or unlawful. Section II B of the Income Tax Act of 1913, 38 Stat. 167, provided originally that—

> ". . . the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any *lawful* business carried on for gain or profit, *or gains or profits and income derived from any source whatever, . . .*" (Italics supplied.)

The Revenue Act of 1916 (39 Stat. 757), § 2 (a), reenacted this provision omitting only the word "lawful" before the word "business" so that now the final clause, as incorporated in § 22 (a), reads, "also from interest, rent, dividends, securities, or the transaction of *any business* carried on for gain or profit, *or gains or profits and income derived from any source whatever . . .*" (Italics supplied.) The 1916 amendment demonstrated an intent to include gains, profits and income from any unlawful business as well as from any lawful business. It is inescapable evidence of a like intent to include unlawful as well as lawful "gains . . . from any source whatever . . ." See *United States* v. *Sullivan,* 274 U. S. 259.

There have been many decisions to the effect that this section includes such unlawful gains as those from illicit

traffic in liquor,[1] race-track bookmaking,[2] card playing,[3] unlawful insurance policies,[4] illegal prize fighting pictures,[5] lotteries,[6] graft,[7] fraudulently misapplied moneys of a client by an attorney,[8] "protection payments" to racketeers and ransom money paid to a kidnapper.[9]

The majority opinion in the present case recognizes that had "the taxpayer used the embezzled money and obtained profits therefrom such profits might have been taxable regardless of the illegality involved." The majority opinion therefore does not exempt the embezzled funds from taxation merely because there is "illegality involved." The opinion reaches its result by reading into § 22 (a) a legislative distinction I do not find there. The opinion limits the section to such gains, unlawful or not, as are accompanied with "a claim of right" by the taxpayer and as are not accompanied with "a definite, unconditional obligation to repay or return that which would otherwise constitute a gain." Believing, as I do, that Congress in this section has sought "to use the full measure of its taxing power," and in doing so has sought to tax all "gains . . . from any source whatever," I am unable to recognize an adequate basis for reading into the broad sweep of the language the unexpressed limitation proposed in the majority opinion.

---

[1] *United States* v. *Sullivan,* 274 U. S. 259. See also, *Steinberg* v. *United States,* 14 F. 2d 564; *Maddas* v. *Commissioner,* 40 B. T. A. 572, affirmed, 114 F. 2d 548; *Poznak* v. *Commissioner,* 14 B. T. A. 727.

[2] *M'Kenna* v. *Commissioner,* 1 B. T. A. 326.

[3] *Weiner* v. *Commissioner,* 10 B. T. A. 905.

[4] *Patterson* v. *Anderson,* 20 F. Supp. 799.

[5] *Rickard* v. *Commissioner,* 15 B. T. A. 316.

[6] *Droge* v. *Commissioner,* 35 B. T. A. 829; *Huntington* v. *Commissioner,* 35 B. T. A. 835; *Voyer* v. *Commissioner,* 4 B. T. A. 1192.

[7] *Chadick* v. *United States,* 77 F. 2d 961, cert. denied, 296 U. S. 609.

[8] *United States* v. *Wampler,* 5 F. Supp. 796.

[9] *Humphreys* v. *Commissioner,* 42 B. T. A. 857, affirmed, 125 F. 2d 340.

The embezzler's complete possession of the embezzled funds, his exercise of dominion over them to the extent of disposing of every cent of them and his transfer of possession of them to others in such a manner as to give the recipients title to them, amounts to such an ample enjoyment of them, use of them, dominion over them, disposition of them and receipt of benefits from them as to make them of obvious economic value to the embezzler. Such a readily realizable value presents no reasonable basis for exempting these funds from taxation that would be applied to them if earned in a lawful manner. The "Government . . . may tax not only ownership, but any right or privilege that is a constituent of ownership. . . . Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis." *Burnet* v. *Wells,* 289 U. S. 670, 678.

In *National City Bank* v. *Helvering,* 98 F. 2d 93, 96, L. Hand, J., writing for the court, said:

> "Although taxes are public duties attached to the ownership of property, the state should be able to exact their performance without being compelled to take sides in private controversies. Possession is in general prima facie evidence of ownership, and is perhaps indeed the source of the concept itself, though the time is long past when it was synonymous with it. It would be intolerable that the tax must be assessed against both the putative tortfeasor and the claimant; collection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant."

In the present case, the embezzler concealed the embezzlement long enough to enable him to gamble away all of the embezzled funds. He asserted, falsely to be sure, but nonetheless positively, his right to dispose of the funds and he did dispose of them beyond all chance

of their recovery. This was a use of them by him for his own enjoyment just as fully as though he had legal title to them. If he had made gambling or other profits from them, he would have claimed those profits as his own and would have been taxed on those profits. If he had gained possession of the original funds by extortion, fraud or usurious practices, those gains would be taxable to him under the general language of § 22 (a). The majority opinion, however, holds that if he gained possession of the original funds by embezzlement then such gains are not to be taxed to him under that language. This reads into the section a sharp distinction between the embezzler and defrauder, exempting the former but not the latter. In the absence of an express declaration of such an intent by Congress, I believe that the courts are not justified in reading such a distinction into this section.

Furthermore, where an embezzler uses embezzled funds for his own purposes and, by concealment of the embezzlement or otherwise, deprives his victim of a corresponding opportunity to enjoy those funds, the Code permits his victim to deduct as a "loss," from the victim's taxable income, the sums so embezzled.[10] See *Burnet* v. *Huff,* 288 U. S. 156. The allowance of such a deduction suggests the intent of Congress to transfer the liability for the tax on those funds to the embezzler. The majority opinion prevents such a transfer.

A point has been made of the fact that the Government's tax lien upon property of the embezzler would have priority over the claim of the victim of the embezzlement to recover from such property the losses which the victim suffered by the embezzlement. This priority of the tax lien is hardly an adequate argument to eliminate the tax itself. At most it is an argument for Congress to modify the tax lien in favor of the victim.

---

[10] 26 U. S. C. § 23 (e).

There is nothing in the Code that expressly requires, as a condition of the existence of a taxable gain, that there also be an absence of "a definite, unconditional obligation to repay or return that which would otherwise constitute a gain." In the case of *National City Bank* v. *Helvering, supra*, p. 95, the taxpayer was taxed on bonds which he had unlawfully withheld from the corporation of which he was an officer. These bonds were the property of the corporation in the sense that it could have reclaimed them and the court said—

> "But there are several cases in which persons have been taxed upon property which could be recovered from them. For example, the lender upon usurious interest—if on an accrual basis—must include his apparent profit in his return, though possibly he may be allowed to deduct it as a loss if the borrower reclaims it. Barker v. Magruder, 68 App. D. C. 211, 95 F. 2d 122. Again, when a railroad collects too large fares, the excess is income, though the passengers have a theoretical right of restitution. Chicago, R. I. & P. R. Co. v. Commissioner, 7 Cir., 47 F. 2d 990."

The administrative interpretation of § 22 (a) long has been to tax the embezzled funds. It dates at least from G. C. M. 16572, XV–1 Cum. Bull. (1936) 82, in which it was expressly recommended that the profits of an embezzler "constitute taxable income in the hands of the embezzler for Federal income tax purposes." This interpretation was followed by the Tax Court in this case and it has been regularly followed by the Board of Tax Appeals in the past. *Kurrle* v. *Commissioner*, 1941 Prentice-Hall B. T. A. Mem. Decisions, ¶ 41,085, affirmed, 126 F. 2d 723; *Estate of Spruance* v. *Commissioner*, 43 B. T. A. 221, reversed *sub nom. McKnight* v. *Commissioner*, 127 F. 2d 572.

Because of the legislative history of § 22 (a), the breadth of the language used by Congress in that section, the attempt of Congress to use the full measure of its taxing

power in that section, the long established administrative practice of holding embezzled funds to be taxable income of the embezzler, and finally because of the arbitrary distinctions in favor of the embezzler which arise from an opposite interpretation of the Code, I believe that embezzled funds are taxable gains as defined by Congress.