## 22784. UNDERCOFLER, State Revenue Commissioner v. BESSEMER AUTO PARTS, INC.

Argued March 8, 1965—Decided May 10, 1965—
Rehearing denied May 31, 1965.

*Eugene Cook, Attorney General, John A. Blackmon, Assistant Attorney General,* for plaintiff in error.

*Herbert H. Cheek,* contra.

Grice, Justice. An appeal by a taxpayer from a State income tax deficiency assessment is for consideration here. The taxpayer, Bessemer Auto Parts, Inc., filed its appeal in the Superior Court of Clayton County from the assessment made by Hiram K. Undercofler as State Revenue Commissioner. The Commissioner's general demurrer to the appeal was sustained by the trial court. That ruling was reversed by the Court of Appeals (*Bessemer Auto Parts, Inc. v. State Revenue Commissioner,* 110 Ga. App. 500, 139 SE2d 157), and we granted the Commissioner's application for certiorari.

The amounts sought to be taxed were paid to the taxpayer by a Georgia partnership of which the taxpayer is a partner. The

Commissioner contends that these amounts were partnership profits distributed to the taxpayer partner and therefore were taxable income to it. The taxpayer, on the other hand, maintains that such amounts were net rebates on its own purchases from the partnership and were not taxable income to it.

The recitals of the taxpayer's appeal, insofar as material here, are those which follow.

The taxpayer, an Alabama corporation, is a member of a Georgia limited partnership, National Parts Warehouse. All partners except a named general partner are automotive jobbers. The principal activity of the partnership is the buying, warehousing and distributing of automotive parts. Its customers are its partners and also non-partner jobbers.

The financial operation of the partnership is recited as follows: "(d) Sales to limited partner-customers are invoiced at the regular jobber prices. At the end of each year the limited partner-customers are given a discount or patronage rebate on purchase price of merchandise purchased. (e) All during the year, accurate records are kept of each partner's purchases of each manufacturer's products and the amount of rebate due thereon. At the end of the year this rebate less a proportionate amount of operating expenses for the year, is refunded to the limited partner. (f) These net rebates, or discounts, are listed as such in the income tax returns filed with the State of Georgia. (g) Earnings on the sale of merchandise to non-partner customers, less its proportionate amount of operating expenses for the year, are paid to all limited partners as net income of the partnership at the end of each year. These amounts are shown as Net Income in income tax returns with the State of Georgia."

Relying upon the foregoing facts, the taxpayer denied the deficiency assessment of $2,015.58 for the years 1957-1961, and appealed.

The Court of Appeals, in reversing the trial court's sustaining of the general demurrer to the taxpayer's appeal, reviewed cases from other jurisdictions, found that there was a "fixed liability" upon the partnership to rebate the amounts in question, and that the amount of such rebates was based on the purchases made each year from the partnership by the taxpayer partner, not on the partner's interest in the partnership. It held that such re-

bates were "ordinary and necessary" business expenses of the partnership, deductible by it in arriving at its net income, and thus not partnership profits so as to be taxable income to the taxpayer.

We agree with the result reached by the Court of Appeals, but not with the basis of its decision.

Construed most strongly against the taxpayer, as it must be on general demurrer, the appeal does not show a fixed liability on the partnership to make the rebates involved here. It alleges that the partner-customers ". . . *are given* a discount or patronage rebate on the purchase price of merchandise purchased," that all year "accurate records *are kept* of each partner's purchases . . . and the amount of rebate due thereon," and that at the end of the year this rebate less certain operating expenses "*is refunded* to the limited partner." (Emphasis ours.) We see nothing in this language which shows any "fixed liability" of the partnership to make such rebates. The most that is shown is the practice followed by the partnership — discounts "are given," records "are kept," and the rebate "is refunded." No obligation or binding agreement to so do is even hinted. And we do not agree that such information, if desired, should have been sought by special demurrer. If fixed liability was an essential element of the appeal, as indicated by the Court of Appeals, the general demurrer must have reached it.

However, as we view the situation alleged, fixed liability of the partnership to make the rebates is not controlling.

To us what is decisive is that the rebates were the return to the taxpayer of its own money, as the facts here show. The amounts which this taxpayer and each of the other partners received were based upon what each had purchased during the year and the discount due on these specific purchases, less the particular partner's proportionate share of the operating expenses of the partnership for the year. The amounts of the rebates had no connection with the total sales or profits of the partnership or with the interest of the particular partner in the partnership, but were merely a discount to the partners on their own individual purchases and hence the return to them of their own money.

There is no statute of this State which covers the situation now

before us. While *Code Ann.* § 92-3107 defines gross income and lists certain items which shall not constitute gross income, this section obviously does not purport to cover all situations which may arise. For instance it does not recite that repayment of a loan to a creditor by its debtor is not included in the gross income of such creditor. Yet no one would contend that amounts so received are gross income of the creditor for income tax purposes. The transaction at bar, like the repayment of money loaned, is merely the return to the taxpayer of its own money and is not included in its gross income. It follows then that *Code Ann.* § 92-3108, which defines net income as "the gross income of a taxpayer, less the deductions allowed by this law," and *Code Ann.* § 92-3109, which recites such allowable deductions, have no application here.

Under these circumstances the rebates here constituted no partnership gain to the taxpayer and therefore no income taxable to it by Georgia. That gain or profit is an essential element of income is made clear in the decisions. See Eisner v. Macomber, 252 U.S. 189 (40 SC 189, 64 LE 521); Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404 (66 SC 546, 90 LE 752). Furthermore, it has been held in a situation comparable to the one here that a partner's distributive share which results from his own payments to the partnership is not taxable as income received by him. Benjamin v. Hoey, 139 F2d 945 (CCA 2). There, the court said, "To put it differently, that sum . . . [resulting from the partner's own payments] he paid to himself, and what one pays to one's self cannot be part of one's income. Nothing in any statute or decision relating to a partner's income leads to a different conclusion."

The rebates here, although affecting the taxpayer's inventory costs and thus perhaps the profits in its own business in Alabama, did not constitute profits from the Georgia partnership of which it is a partner.

Therefore, we hold that the result reached by the Court of Appeals was correct.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Head, P. J., and Quillian, J., who dissent.*