Charles W. Beeler and Ann Beeler v. Commissioner.
Beeler v. Commissioner
Docket No. 5259-63.
United States Tax Court
T.C. Memo 1966-130; 1966 Tax Ct. Memo LEXIS 154; 25 T.C.M. (CCH) 659; T.C.M. (RIA) 66130; June 16, 1966
*154 Held, (1) income in respect of a negotiable note which T obtained in 1957 and sold in 1958 may not be attributed to him in 1959 in the light of the facts before the Court; (2) T was the sole owner of certain property in 1959 and was therefore chargeable with the stipulated rentals in respect thereof and the stipulated capital gain realized at the time of foreclosure. Conrad T. Hubner, 68 Post St., San Francisco, Calif., for the petitioners. Roger A. Pott, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioners' 1959 income tax in the amount of $260,005.16 plus an addition to tax in the amount of $13,000.26 pursuant to Section 6653, Internal Revenue Code of 1954. The only matters presently in *155 issue are (1) whether petitioner Charles W. Beeler received income in the amount of $325,000 in 1959 in respect of a certain note which he acquired in 1957 and sold in 1958; and (2) whether petitioner was the sole owner of the Bellevue-Staten Apartments during 1959. The answer to the second question affects two adjustments made by the Commissioner, one concerning rental income from that property, and the other the capital gain realized on the foreclosure sale thereof. Findings of Fact The facts and accompanying exhibits stipulated by the parties are incorporated herein by this reference. The petitioners are husband and wife, presently residing at Victoria, British Columbia. They filed a joint income tax return for 1959 on a cash basis with the district director of internal revenue, San Francisco, California, giving Hillsborough, California, as their home address. Charles W. Beeler will be referred to herein as petitioner. In July 1957, petitioner owned, as his separate property, an apartment building in Oakland, California, known as the Bellevue-Staten Apartments (hereinafter referred to as the Bellevue-Staten). That property was then a portion of the security for a blanket *156 note and deed of trust for the benefit of the Pacific Mutual Life Insurance Company. The portion of the loan allocated to the Bellevue-Staten was $550,000, and the encumbrance could be released from the property by payment to the obligee of that amount plus accrued interest. In July 1957, petitioner had an unrecorded agreement with Morgan Peacock Properties Corporation (hereinafter referred to as Morgan Peacock) looking towards the exploitation of the Bellevue-Staten by converting it into cooperative apartments with Morgan Peacock as the selling and managing agent. In the agreement petitioner undertook to transfer title to the Bellevue-Staten to a corporation to be formed and to be named Bellevue-Staten Corporation (hereinafter referred to as the corporation), in exchange for the stock of the corporation. The corporation, when it was formed, was to be a community stock corporation, or cooperative apartment, and Morgan Peacock agreed to sell the stock of the corporation to tenants (present and prospective) of the Bellevue-Staten. In July, 1957, Albert G. Raisch and his wife Katherine J. Raisch owned a negotiable promissory note secured by a first deed of trust on certain real estate *157 located in Marin County, California. This note and deed of trust, hereinafter referred to collectively as the Spielman note, had been executed on September 14, 1955, by E. J. Spielman and Esther R. Spielman, his wife. The note was in the principal amount of $375,000, with interest on the unpaid principal at the rate of 5 percent per annum. As of July 24, 1957, no part of the principal had been paid and interest in the amount of $12,551.68 had accrued to July 14, 1957; the note was in default as to both principal and interest. On July 24, 1957, petitioner entered into a written contract with the Raisches, entitled "Exchange Agreement", by the terms of which the Raisches transferred to petitioner the Spielman note without recourse. In consideration thereof petitioner assigned to the Raisches the right to receive $387,551.68, together with interest at the rate of 5 percent per annum on the unpaid balance from July 14, 1957, from the proceeds of the sale of the apartments as evidenced by the corporation's stock. The total sum was to be paid on or before July 14, 1958, with provision for possible postponement of the obligation to pay the balance due until July 14, 1959, if on or before *158 July 14, 1958, all of the interest on the unpaid balance and 25 percent of the principal sum of $387,551.68 had been paid. In further consideration petitioner agreed to deed to City Title Insurance Company (hereinafter referred to as the Title Company), the fee title to Bellevue-Staten pursuant to an irrevocable "holding agreement", whereby the Title Company was to receive all of the stock of the corporation once the stock was authorized to be issued by the Corporation Commissioner of the State of California. Pursuant to the provisions of and concurrently with the Exchange Agreement, the Raisches, petitioner, and the Title Company executed an "Irrevocable Holding Agreement as to Title of the Bellevue-Staten Apartments" (hereinafter referred to as the Holding Agreement), under the terms of which title to Bellevue-Staten was to be transferred to the Title Company. By the terms of the Holding Agreement the parties agreed that the Title Company would hold title until incorporation of the Bellevue-Staten Corporation, whereupon the Title Company would transfer title to the corporation in exchange for all of its stock. The stock would be held by the Title Company in accordance with *159 the Exchange Agreement, and as the stock was sold to tenant-owners by Morgan Peacock the purchase price thereof would be paid to the Title Company in exchange for release of the shares to the purchasers. The parties also agreed in the Holding Agreement that the Title Company would promptly and at least monthly pay the proceeds of the stock sales to the Raisches until they were paid $387,551.68, plus interest at 5 percent from July 14, 1957. After the Raisches had been paid in full the parties agreed that the Holding Agreement would terminate, and the balance of the stock was to be delivered to petitioner. On or about July 24, 1957, pursuant to the Exchange Agreement and the Holding Agreement, the Raisches transferred the Spielman note to petitioner, and petitioner deeded the Bellevue-Staten to the Title Company to be held by it pending the organization of the corporation and the issuance and sale of the corporation's stock and the payment of proceeds therefrom to the Raisches. Subsequently, on August 1, 1957, a note for $200,000, secured by a second deed of trust on Bellevue-Staten (Beeler was trustor, City Title Insurance Company, trustee, and Bruce A. Werlhof was the beneficiary), *160 was executed by petitioner to Werlhof, petitioner's then attorney. There was no consideration to support this transaction, and petitioner at the time he gave the note to Werlhof did not owe him any money. The purpose of this transaction was to enable Werlhof to negotiate the note and deed of trust at a discount and thereby provide petitioner with funds for his personal use. Thereafter, on August 9, 1957, the Title Company deeded the Bellevue-Staten to petitioner to permit him to record the second deed of trust securing the $200,000 note to Werlhof. Then, petitioner reconveyed the property to the Title Company to be held by it pursuant to the Holding Agreement. The Raisches have denied under oath knowledge of the foregoing transactions prior to June, 1958. On August 28, 1957, petitioner caused Articles of Incorporation to be filed with the Secretary of State in an attempt to convert the Bellevue-Staten into cooperative ownership. No permit to sell stock was obtained, however, and no stock was ever issued or sold. The project was never consummated. On September 30, 1957, an instrument entitled "Addendum to Exchange Agreement" (hereinafter referred to as the Addendum), was executed *161 by petitioner and the Raisches. This instrument recited that petitioner would sell and transfer to the Raisches a one-half interest in and to the Bellevue-Staten for $125,000, to be paid in accordance with the terms of the Addendum. Petitioner agreed to increase the existing $750,000 [1] obligation against the Bellevue-Staten to $1,000,000. Under the terms of the Addendum the parties agreed that the $750,000 obligation now against the Bellevue-Staten would be discharged from the proceeds of said $1,000,000 loan. The increase of $250,000 was to be divided equally between petitioner and the Raisches, and the latter were to pay their $125,000 to petitioner for the purchase of one-half interest in the Bellevue-Staten. At this time there existed two encumbrances against the Bellevue-Staten, the $550,000 blanket mortgage and the $200,000 second. Petitioner and the Raisches in the Addendum agreed that the amount to be paid to the Raisches under the Exchange Agreement and Holding Agreement for the purchase of the Spielman note was now $391,692.64, with interest to cease concurrently with the execution of the Addendum. *162 Pursuant to the Addendum the Raisches executed and delivered their $125,000 non-interest bearing six-month promissory note dated September 30, 1957, to petitioner, who expressly agreed not to assign it to any third party. However, petitioner thereupon did assign the $125,000 note to a bank as collateral for obligations he owed to the Bank. The Raisches made inquiries to determine the facts regarding the assignment, whereupon petitioner reacquired the $125,000 note from the bank and returned it to them. The refinancing contemplated by the parties as set forth in the Addendum was never accomplished. On October 10, 1957, Werlhof through the Title Company assigned the $200,000 note and deed of trust to West American Finance Company for $125,000 cash, all of which was actually paid to or for the benefit of petitioner. Petitioner had an option to purchase the note and deed of trust for $175,000. On June 6, 1958, petitioner sold the $375,000 Spielman note to Roy E. Crummer, for $325,000 cash, all of which was paid to or for the benefit of petitioner. On July 2, 1958, the Bellevue-Staten was encumbered with a new $600,000 first deed of trust running to Aetna Life Insurance. Company *163 as beneficiary, subordinating the $200,000 second deed of trust in favor of West American Finance Co., referred to above. At this time the blanket mortgage of $550,000 was removed from the Bellevue-Staten. From the proceeds of that $600,000 loan, $561,637.87 was paid to "AlamedaTitle" representing the total amount of principal and interest necessary to remove the previously described blanket loan from the Bellevue-Staten. Petitioner had previously paid Morgan Peacock $27,000 on account of the blanket loan. Shortly after July 8, 1958, Morgan Peacock refunded $27,000 to the petitioner. A disbursement was also made to West American Finance of principal and interest of $29,727.80 on account of the $200,000 Werlhof note and deed of trust which was in arrears until such payments were applied to it. On December 19, 1958, notice of default under the $200,000 second deed of trust was recorded by West American Finance Co. On December 9, 1959, the Bellevue-Staten was sold by the trustee Title Company under the Werlhof $200,000 second deed of trust at a foreclosure sale, subject to the interest of the superior lien holder, Aetna Life Insurance Co. The holders of the note and second deed *164 of trust were the purchasers at the sale, and the Title Company transferred title by trustee's deed dated December 10, 1959, to them. There was no equity of redemption, and the sale terminated any and all ownership interests of petitioner as well as of the Raisches to the extent that the latter had any such interests, if at all. On March 26, 1959, the Raisches filed an amended complaint in a suit against petitioner and others, in the Superior Court of the State of California, in and for the County of Alameda. Petitioner in his answer to the Raisches' complaint filed November 20, 1959, in the Superior Court of the State of California, in and for the County of Alameda, denied owing the Raisches any money. A joint and several judgment for $200,000 was rendered on November 7, 1961, in that action in favor of the Raisches against petitioner and City Title Insurance Co. In addition, judgment was also rendered against petitioner in the amount of $187,551.68, together with interest on the total amount of $387,551.68. The Addendum was found to have been abandoned by the parties. In accordance with the joint and several judgment for $200,000 rendered against petitioner and the Title Company, *165 the latter compromised the judgment against it by paying the Raisches $130,000 in 1962. Petitioner appealed the judgment against him in the District Court of Appeals of the State of California, First Appellate District, which affirmed the judgment of the lower court. That judgment is now final. However, petitioner has not paid to the Raisches any part of the judgment rendered against him, neither the joint and several judgment for $200,000 nor the separate judgment for $187,551.68. In determining the deficiency herein the Commissioner charged petitioners with "other income" for 1959 in the amount of $325,000, which he explained as follows: (e) The Spielman Deed of Trust was purchased by you from Mr. A. G. Raisch on July 2, 1957. Under the Exchange Agreement dated July 24, 1957, you were to pay Mr. Raisch the sum of $375,000.00, plus interest, out of the proceeds to be received from the sale of Bellevue-Staten Apartments stock. Since no stock was ever sold, nothing was paid to Mr. Raisch. On June 6, 1958 you sold the $375,000.00 Spielman Deed of Trust to Mr. Roy E. Crummer for $325,000.00 cash. You had unrestricted use of the funds received from the sale, and denied under oath *166 any obligation to pay over any of the proceeds to the rightful former owner of the Deed of Trust. It is held that the conversion of the proceeds from the sale of the Spielman Deed of Trust for your personal use, the denial of liability to repay in Mr. Raisch's complaint dated March 26, 1959 in Alameda Superior Court Action No. 296372, and the foreclosure on December 9, 1959, of the Bellevue-Staten Apartments with its consequent extinction of Mr. Raisch's equitable lien thereon, resulted in the realization of taxable income to you. Accordingly, income has been increased by $325,000.00. Two other adjustments made by the Commissioner, involving 1959 rental income from the Bellevue-Staten as well as gain realized upon a foreclosure sale of that property in 1959 depend upon the ownership of that property in 1959. Petitioner was the sole owner of the Bellevue-Staten throughout 1959 up to the foreclosure sale on December 9, 1959. The net rental income therefrom for the year 1959 to the date of foreclosure was $1,393, and the capital gain realized from cancellation of indebtedness on the foreclosure sale on December 9, 1959 was $18,166. Opinion RAUM, Judge: 1. The principal issue is *167 whether the Commissioner erred in attributing $325,000 in income to petitioner for the year 1959 in respect of the Spielman note. Petitioner acquired the Spielman note (in the principal amount of $375,000 plus $12,551.68 accrued interest) from the Raisches in 1957. He sold the note in 1958 for $325,000. And in 1959 the Bellevue-Staten was sold on foreclosure, thus depriving the Raisches of any chance of obtaining any consideration for the note from that source. Also, in 1959, in litigation in a California court between the petitioner and the Raisches, petitioner formally denied any personal liability to pay the Raisches any consideration for the note. Thereafter, in 1961, judgment was entered against petitioner in favor of the Raisches in the aggregate amount of $387,551.68; that judgment was subsequently affirmed on appeal, and it is now final. Petitioner has never paid the Raisches anything on that judgment. Plainly, petitioner acquired the Spielman note, obtained benefit therefrom by selling it, and at all times held the note or proceeds therefrom under a claim of right. He never paid anything for the note, nor does it appear that he ever intended to pay for it or that he ever *168 intends to sastisfy the judgment rendered against him. [2] In the circumstances, there seems to be substantial support for the position that he has realized taxable income. Cf. James v. United States, 366 U.S. 213; Rutkin v. United States, 343 U.S. 130; Akers v. Scofield, 167 F. 2d 718 (C.A. 5), certiorari denied 335 U.S. 823; L. M. Muldrow, 38 T.C. 907. The opinions in both the trial and appellate California courts which adjudicated the claims of the Raisches against the petitioner were placed before us by the stipulation of the parties herein and were incorporated in our findings by reference. They strongly indicate that the Raisches were swindled by petitioner, although they avoid a specific finding of fraud in view of the Raisches' election of remedy to proceed in contract rather than in tort. The difficulty with the Government's position herein, however, is that it attempts to charge petitioner with *169 income in respect of the Spielman note for the year 1959. Whether the acquisition of the note be regarded as a legitimate business transaction or as a swindle, we think the Commissioner has selected the wrong year. Petitioner acquired the note in 1957 and sold it in 1958, acting at all times under a claim of right. The mere fact that he made a formal denial of personal liability in the litigation in 1959 does not fix that year as the proper time for charging him with income in respect of the note. The Exchange Agreement itself, executed in 1957, discloses an intention by petitioner to disavow personal liability and to give the Raisches recourse only against the Bellevue-Staten or the proceeds of possible sales of its apartments. Petitioner's disclaimer of personal liability in 1959 was nothing new. Nor has it been made clear to us why the foreclosure sale of the Bellevue-Staten in 1959 should be regarded as marking the point of time when petitioner realized income in respect of the Spielman note. On the facts before us, we conclude that realization occurred prior to 1959. 2. The second issue relates to the ownership of the Bellevue-Staten in 1959. Our finding that petitioner was *170 the sole owner up to the foreclosure sale on December 9, 1959, disposes of this issue, leaving petitioner chargeable with the stipulated 1959 rentals from the property as well as with the stipulated capital gain realized upon foreclosure. The stipulation of facts shows that petitioner owned the property in July 1957, and the record fails to show that petitioner was not the sole owner in 1959. The burden of proof was upon him, and it has not been carried. The only evidence pointing the other way was the so-called Addendum Agreement whereby petitioner purported to sell a one-half interest in the property to the Raisches on September 30, 1957. But the terms of that agreement were never carried out, and the California court found that it had been abandoned by the parties. Nor did the Exchange Agreement itself transfer any ownership interest in the property. Since no other evidence was presented as to any other lesser interest in the property during 1959 prior to foreclosure, we hold that the stipulated rental and capital gain realized at foreclosure must be attributed in their entirety to petitioner. Decision will be entered under Rule 50. Footnotes
1. The Exchange Agreement contemplated the increase of the $550,000 first mortgage to $750,000, but contained no provision permitting the placing of the $200,000 Werlhof second mortgage, referred to above.↩
2. Indeed, the stipulation of facts recites that petitioners are presently residing at Victoria, British Columbia. A contrary statement by petitioners' counsel on brief is totally without support in the record.↩