## APPEAL OF A. L. VOYER.

Docket No. 5453.   Decided September 29, 1926.

1. Amounts received from a lottery, although such lottery is illegal, are taxable. *Appeal of James P. McKenna*, 1 B. T. A. 326.
2. Payments made to an attorney for his client, and retained in part by the attorney to secure payment of his fees and disbursements, are taxable income to the client on a cash basis in the year in which paid over by the attorney.

*W. W. Spalding, Esq.*, for the petitioner.
*J. W. Fisher, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income tax for 1922 in the amount of $619.55. The questions involved are (1) whether the amounts received by the taxpayer in settlement of his claim for lottery winnings are taxable, and (2) in the event they are held to be taxable, the year or years in which such amounts should be returned as income.

### FINDINGS OF FACT.

In 1921 the Northern Hotel, located in Chippewa Falls, Wis., was owned by a corporation. The local Elks Lodge occupied the upper floors. The hotel company was in financial difficulty, there being approximately $70,000 of outstanding mechanics' liens and other claims against the hotel which the company could not pay. An agreement was entered into under which the hotel company agreed to deed the property to the lodge upon payment of all obligations existing against the property. In order to raise the necessary money the lodge sold tickets to a Mardi Gras or carnival to be held on July 4, 1921. The ticket contained on its face the following:

ELKS Mardi Gras and Historical Pageant, *Chippewa Falls, Wis., June 28, to July 4, 1921. Established Price $1.00 War Tax Paid 10 cents. Total $1.10.*

### ADMIT ONE TO ALL FUNCTIONS

Chippewa Falls Lodge No. 1326, will make a present of the Hotel Northern and Elks Club House at Chippewa Falls, Wisconsin, and the real estate upon which it is situated, valued at $300,000, to the original purchaser and owner of the designated admission ticket sold for the functions of the Elks Mardi Gras and Historical Pageant.

Over

No. J          3424.

On the back of each ticket was printed the following:

All admission tickets sold for said functions shall be numbered consecutively and upon July 4, 1921, a FREE GIFT will be made and the original purchaser and owner of an admission ticket shall be given a deed to said building and the real estate upon which it is situated, free and clear of all liens and incumbrances, except leases outstanding, which will be assigned to the owner of said ticket; it is understood, however, that the said Chippewa Falls Lodge No. 1326, B. P. O. E., reserves the right to retain possession of and occupy and use the fifth floor of said building, free of rent, for and during the term of fifteen years from and after the date upon which said gratuitous gift shall be made together with all approaches, appurtenances, rights of way for ingress or egress connected with the use and occupancy of said fifth story. It is understood that the sole and only consideration for the price paid for this admission ticket is and shall be admission to the said Mardi Gras and Historical Pageant and that the gift of the property and real estate herein mentioned is and in every respect shall be gratuitous and that the purchaser hereof purchases and takes the same with the full understanding and agreement that the gift of the property is not and shall not be considered any part of the consideration for the price paid for this ticket and constitutes no part of the consideration for said admission price.

The lodge then conducted a ticket-selling campaign throughout the State. The tickets were sometimes sold in blocks of eleven, it being agreed among the purchasers in the pool that if any one of the purchasers of such blocks of eleven tickets held the winning ticket,

the others in the pool would share in the prize in the proportion to the number of tickets purchased in that block of eleven.

The taxpayer purchased four tickets in a pool of eleven. One Peter Layman purchased two and the remainder of the block of eleven were purchased by friends of the taxpayer. At the Mardi Gras held July 4, 1921, numbers corresponding to those upon the tickets sold were placed in a large churn and the winning number was drawn out in the presence of the spectators by a girl selected from the audience. She drew the number of the ticket held by the said Peter Layman, and a telegram was immediately sent him advising him thereof. Under the terms of the raffle or lottery Peter Layman became entitled to the prize, but under the terms of the pool agreement the taxpayer became entitled to four-elevenths interest therein.

Shortly after July 4th the winners retained counsel, who went to Chippewa Falls and met the representatives of the lodge. It was suggested at that time that the State of Wisconsin might start action for forfeiture of the property under section 4528 of the Wisconsin Statutes of 1921, which provided:

All sums of money and every other valuable thing drawn or received by any person who is an inhabitant or resident of this state at the time, as a prize or share or part of a prize derived in, by or through any lottery or pretended lottery, contrary to the provisions of the preceding sections of this chapter, shall be forfeited to this state and may be recovered by any proper action brought by the attorney-general or any district attorney in the name and behalf of the state.

Action under the statute was instituted by the Attorney General of Wisconsin in the early fall of 1921. The defendants, including the taxpayer, interposed a defense and contested the action. A decision was rendered in June, 1922, in which the court held that the forfeiture provision was unconstitutional, and that the property should therefore not be forfeited, but also stated that the transaction was a lottery and illegal.

No further action in the matter was taken by taxpayer's counsel until the attorney general had reached the conclusion that the court's decision was correct and that he would not prosecute an appeal.

Although the court decided that the property could not be forfeited to the State, it was the opinion of taxpayer's counsel that the statement of the court that the transaction was a lottery and illegal precluded any successful legal action to obtain the property.

In September, 1922, the taxpayer's counsel attempted to secure a settlement. The hotel company still held the legal title to the property. A committee was appointed by the lodge to undertake a settlement but nothing was accomplished. In December, 1922, the lodge appointed a new committee. Counsel for the taxpayer met this

committee at Chippewa Falls in December and negotiations were entered into. The lodge, through this committee, finally offered to pay $25,000 in cash and $25,000 in bonds. Counsel for the taxpayer offered a counter proposition to the effect that if the lodge would also offer $15,000 in stock of the hotel company, in addition to the cash and bonds, he would recommend that his clients accept the offer. The committee of the lodge agreed to submit the proposition to the lodge and to the hotel. At that time the committee paid counsel for the taxpayer and others interested $25,000 in cash. He deposited it in the bank in his own name as trustee and immediately distributed $11,000 of it to the winners of the prize, of which amount the taxpayer received $4,000 in 1922. The balance was retained by counsel as a fund out of which should be paid his attorney's fees and expenses and future contingencies.

Resolutions of substantially the same effect were adopted by both the lodge and the trustees of the hotel on January 8, 1923, and January 11, 1923, respectively. That adopted by the hotel company read:

Resolved that, whereas the land contract existing between this Company and the Elk's Lodge of Chippewa Falls for the sale to the said Lodge of the Hotel Northern property has not been fully carried out by the said Lodge; but said Lodge has paid all mechanics liens outstanding against this company and its said property at the date of said land contract; and has purchased bonds issued by this Company to the par or face value of $25,000.00; and a settlement and compromise agreement has been reached with said Lodge whereby said Lodge is to forfeit to this Company all moneys paid by said Lodge in payment and satisfaction of said mechanics liens; and is to reconvey said premises to this Company by quit claim deed and release this Company from carrying out the terms of said land contract on its part to be performed:

It is therefore, in consideration of the mutual promises and agreements and as a part of said settlement and compromise, hereby agreed and understood that all outstanding bonds issued by this Company against its said property and pledged as collateral to notes which have been paid by said Lodge and the bonds thereupon delivered to said Lodge (said bonds amounting to the par or face value of $25,000.00) be and are hereby declared to be the property of said Lodge and its assigns as outstanding, valid, subsisting obligations of this Company and liens on its said property; and it is further, for said considerations, agreed that said Lodge upon carrying out this agreement on its part shall be and is hereby released from further carrying out the terms of said land contract on its part; and the President and Secretary of this Company are hereby authorized and directed to carry out said settlement and compromise on the part of this Company, and to that end do and perform any and all acts and things whatsoever expedient or necessary to that end, including the signing of a formal agreement with said Lodge (or its assigns) incorporating the provisions thereof; and any person or corporation now having physical possession of said bonds are thereby authorized to deliver said bonds (with all past due coupons detached) to the said Lodge or its assigns upon said Lodge complying with the provisions of said settlement and compromise on its part to be performed; and when said settlement and compromise have been completed and consummated, the attorney for this company is authorized to enter into a stipulation for dismissal of the action now pending in the Circuit Court for Chippewa Falls brought by the State against this Company and others.

After the passage of the above resolution there was more difficulty with respect to the settlement on account of objections raised by certain of the stockholders of the hotel company. On January 26, 1923, these objections were overcome and $25,000 in bonds and $15,000 par value of stock, which had a market value of $3,000, were delivered to the counsel for the winners, who distributed the same to the taxpayer and others interested. After deducting the expenses and counsel fees the taxpayer, in addition to the $4,000 received by him on December 21, 1922, received additional amounts as follows:

| | |
|---|---:|
| Cash | $2, 100. 00 |
| Bonds (market value) | 6, 528. 90 |
| Stock (market value) | 1, 040. 00 |

The above additional amounts were received in the early part of February, 1923. The attorneys' fees and expenses were settled in 1923 by the attorneys retaining $3,000 in cash, $7,500 par value in bonds and $700 par value of stock. Practically all the expenses had been incurred before the end of 1922. The $2,100 turned over to the taxpayer in February, 1923, was a part of the cash received by his counsel in December, 1922. Such books as were kept by the taxpayer were on the basis of cash receipts and disbursements.

The taxpayer, in his return, reported a loss of $1,430.67 for 1922 and did not include any of the amounts received as winnings from the lottery. The Commissioner, in computing the deficiency, has included as income for 1922, cash of $6,100, bonds of $6,528.90, and stock of $1,040, a total of $13,668.90.

### OPINION.

PHILLIPS: The taxpayer contends (1) that the amount received from the settlement of his claim for the lottery winnings is not taxable, and (2) that a portion at least should be allocated to the year 1923, if the amounts are held to be taxable.

As to the first contention, we are of the opinion that said amounts are taxable. *Appeal of James P. McKenna,* 1 B. T. A. 326.

Respecting the second contention, it is clear that it was not until 1923 that a settlement was reached, and that the Commissioner is clearly in error in treating the bonds and stock as having been received in 1922.

During that year, however, $25,000 was paid in cash to counsel for the taxpayer and others concerned. This sum counsel deposited in his name in trust. He paid $11,000 to his clients, taxpayer receiving $4,000 thereof, and retained the balance to secure payment of his fees and expenses. This was well within his legal rights, the counsel having the right to assert an attorney's lien upon the proceeds. The question arises whether taxpayer is liable to report as income the $4,000 received by him from his counsel, or four-elevenths of the $25,000 received by counsel.

It is urged that receipt by an agent is receipt by the principal, and that taxpayer received four-elevenths of the amount paid over to his counsel. This rule, however, has its limitations. No one would contend that the agent, if sued, could invoke the rule for the purpose of saying that, as between the agent and his principal, payment to the agent discharged him from accounting to his principal. And the Government is in no better position, for it can tax only the amount which the taxpayer has received in fact, since he is on a cash basis.

The agent asserted his right to retain a portion of the proceeds. To this money both parties have a claim. It is perfectly clear that the taxpayer has not in fact received and has no right to receive the full amount paid to his counsel and that he never will receive such amount. It is not until settlement is made that he will know how much he is to receive. While as between the lodge and taxpayer, taxpayer had received $9,091, as between taxpayer and his counsel and also as between taxpayer and the Government he received only $4,000 in 1922, and is taxable on that amount.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*

TRAMMELL, dissenting. While only $4,000 in cash was actually paid over to the taxpayer by his counsel in 1922, it is a well established principle of law that receipt by an agent is receipt by the principal. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342. Of the $25,000 received by the attorney in 1922, $9,091 belonged to the taxpayer. The fact that it was not paid him by his attorney in 1922 is not material. The amount of the expenses and attorneys' fees is deductible from gross income. They should be deducted when paid and not when incurred, since the taxpayer was on the basis of cash receipts and disbursements. The expenses were not only not paid, but they were not determined and not determinable in 1922. While it is true that the attorney may have had a lien on the fund for his fees and expenses incurred by him in collecting it, such items are properly deductible by the taxpayer as ordinary and necessary expenses in the year when paid. The entire amount received by the attorney for the taxpayer was a part of the gross income of the taxpayer. Ordinarily, when such items of expense are paid out in the same years in which the amount was received, it would make no difference in the result whether such items be held to reduce gross income or be held deductible from gross income in determining net income. The fact that in this case it does make a difference should not prevent the application of what seems to be a plain provision of the statute. Expenses incurred in producing income do not reduce the amount of gross income but are deductible from gross income in determining net income.