In the Matter of EDGAR BROMBERGER, as Commissioner of Investigation of the City of New York, Petitioner. FRANK ERICKSON, Respondent

Supreme Court, Special Term, New York County, April 11, 1946.

*John J. Bennett, Corporation Counsel (Morris Shapiro* of counsel), for petitioner.

*George Morton Levy* for respondent.

McGEEHAN, J. Upon the foregoing papers this application is disposed of as follows: Inasmuch as both sides to this litigation have requested this court to decide this application upon the present record which includes the testimony adduced before the late Honorable Richard P. Lydon, Official Referee, this court has acceded to such request and acts accordingly.

This application seeks an order adjudging the respondent in contempt for refusing to answer specific questions directed to him by the Honorable Edgar Bromberger, as Commissioner of Investigation, and to direct that a warrant issue to the Sheriff of New York City commanding him to apprehend the respondent and to commit him until he answers the questions or is otherwise discharged by law. This proceeding does not determine or adjudicate the ultimate liability of book-makers to pay the gross business tax imposed by the City of New York. The adjudication of that specific question is reserved for some other litigation in which that question is more directly raised and put into issue. This application only indirectly involves the question insofar as it is necessary to ascertain whether there has been malfeasance, nonfeasance or failure to discharge a legal duty on the part of any of the named agencies of the executive branch of the municipal government in connection with the collection of gross business taxes from book-makers operating illegally in the city of New York. There are no allegations of such malfeasance, nonfeasance or failure to do a prescribed duty contained in the petition submitted to this court and the evidence adduced does not establish malfeasance, nonfeasance or failure to discharge a legal duty on the part of

the Comptroller, the Treasurer of the City of New York, the Police Department or the Board of Higher Education. This entire proceeding is predicated upon the theory by the Commissioner of Investigation that the gross business tax should be collected from book-makers and that he is the official designated by law to collect said tax and he has selected the respondent as the object of his experimentation. The respondent has duly appeared and has answered some questions but has refused to answer other questions upon purely legal grounds. Before a person should be punished for contempt the right to such relief must be clearly established. If there is doubt as to whether the petitioner has the right to proceed in the manner adopted or whether the respondent's conduct amounted to a contempt under the attending circumstances such doubt must be resolved in favor of the respondent. Now, whether the Commissioner of Investigation had the right to conduct the investigation in question and to compel an answer to the questions propounded is not free from doubt and uncertainty. The investigation obviously was directed at the effect of the prevailing law on private persons as distinguished from any agency of the executive branch of the municipal government. The effect of the law on book-makers should be decided by a proper proceeding by the taxing authorities who may levy a tax and then proceed to collect same. The circuitous method adopted herein by the Commissioner of Investigation is without legal sanction.

While the State of New York enjoys the privilege of taxing incomes from whatever source derived, whether legal or illegal, there is no clear or unmistakable language used to delegate such power and privilege to New York City as a municipal corporation with reference to the gross business tax. It would have been comparatively simple for the Legislature to express such an intent by employing the same language used in the State income tax law (Tax Law, § 359). Failure to use such language throws some doubt upon whether the Legislature intended to confer such right on a municipal corporation to tax illegal book-making considering the prohibition in the State Constitution against all book-making that is not pari-mutuel. The Constitution of the State of New York specifically provides in section 9 of article I: " No law shall be passed abridging the rights of the people peaceably to assemble and to petition the government, or any department thereof; nor shall any divorce be granted otherwise than by due judicial proceedings; no lottery or the sale of lottery tickets, pool-selling, *book-making,* or any **other kind of gambling, except pari-mutuel betting on horse**

races as may be prescribed by the legislature and from which the *state* shall derive a reasonable revenue for the support of government, shall hereafter be authorized or *allowed within this state;* and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section." (Italics supplied.)

The Legislature has specifically provided that " Such pari-mutuel betting shall only be conducted within the grounds or enclosure of a race track on races at such track and on such dates when racing at such track shall have been authorized pursuant to this act." (L. 1940, ch. 254, § 2.) In other words, book-making not part of pari-mutuel betting at the track is taboo in the State of New York by virtue of constitutional enactment. Only during the 1946 session of the State Legislature was the municipal corporation of the City of New York given the power to share in the legalized pari-mutuel betting. Before this enactment in 1946 the power of the City of New York as a municipal corporation to share in pari-mutuel betting in New York City was nonexistent. As to illegal book-making no power has ever been specifically conferred upon the City of New York as a municipal corporation to levy a tax. While the United States Government and the State of New York have the right to share through their income tax laws in the proceeds from illegal book-making it must be borne in mind that the United States Government and the State of New York are sovereign powers and may act accordingly. The City of New York on the other hand is not a sovereign power. It is merely a municipal corporation and must be considered as such. The sovereign right of the State of New York to share in the proceeds of illegal book-making has not been delegated to include municipal corporations and the present right of the City of New York to share in the proceeds from illegal book-making in New York City is constitutionally no greater than that of the cop on the corner. If the cop cannot claim a cut on the take from illegal book-making on his beat neither can the city claim a cut on the take within the city's limits. What would. be characterized as an attempt at graft for the cop would be called an attempt to collect an unauthorized tax by the city. Neither cop nor city has been authorized to profit through the flourishing of illegal book-making. Both the cop and the city have one common duty to perform in connection with illegal book-making — namely *wipe it out completely* by arresting and convicting all book-makers operating within the limits of the city. You cannot compromise with what is forbidden. For failure in dis-

charging such duty diligently and efficiently no emoluments have been provided for by the State Legislature. Certainly the gross business tax cannot be considered as a punitive measure in any sense of the word because it specifically applies to all legal and lawful enterprises and there is absolutely no element of punishment involved in said tax.

The language of the law that imposes the gross business tax specifies that " For the privilege " of carrying on or exercising for gain or profit within the city any trade, business, profession, vocation or commercial activity, raises the inquiry — can a book-maker be granted " a privilege " to carry on his business in New York City and who is in a position to confer such privilege on him? Obviously, there is no " privilege " to carry on illegal book-making in New York City and nobody can " assume " a " privilege " that is taboo by constitutional provision. (N. Y. Const., art. I, § 9.) It is clear to this court that the agencies named in this proceeding cannot be held to have been recreant in their duties and obligations when they did not collect gross business taxes from book-makers operating illegally in New York City. While the Constitution of the State of New York specifically condemns illegal book-making as something not to be allowed " within this state " and no mention is made of the kindred evils of prostitution and dope peddling, would it be reasonable to allow municipal corporations to share in the proceeds of such endeavors in the form of levying gross business taxes? No alternative should ever be offered to any city for strict enforcement of the criminal law. Revenue from book-making, prostitution and dope peddling should never be considered as more important even if it should help to remove an existing deficit in municipal administration. Would the city seek to collect gross business taxes from a jewel thief who has committed his larcenies in New York City? The answer should be obvious. Even the United States Government as a sovereign power has been denied the right to levy an income tax upon a thief who stole $12,748.60. (*Commissioner* v. *Wilcox,* 327 U. S. 404.)

The evil of book-making should be removed and not be " allowed within this state " and city simply because it lessens a municipal deficit.

Upon all the papers and records before this court this court recalls its original disposition (185 Misc. 228, 229) wherein the court observed that if through some freak of legislative enactment or judicial interpretation municipal tax exemption has been extended to book-makers this result would be

repugnant to this court's conception of law, equity and justice notwithstanding this court's disdain and displeasure in making the City of New York a participant in such proceeds derived from an acknowledged unlawful and illegal source. Legal research has disclosed to this court that no legislative enactment or judicial interpretation controls this application but that a higher authority — the Constitution of the State of New York — militates against granting this application. In deciding matters of this nature it is necessary that we disabuse our minds of all prejudices and arrive at a conclusion based upon well-established principles of law. These principles, even though they be part of the fundamental law and incorporated in the highest law that we recognize — the Constitution — may be changed but such change must occur through legal processes and not through clamor or hysteria that would tend to undermine the very foundation of our constitutional form of government. The motion is denied in all respects. Settle order.