WALLACE H. PETIT AND EULA J. PETIT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8839. Promulgated June 30, 1948.

*James P. Hill, Esq.*, for the petitioners.
*Edward L. Potter, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: In determining the instant deficiency, respondent increased the reported net income of the taxpayers by $26,309.83 of "miscellaneous income" not reported in their orginal 1944 return. In so doing, respondent did not state the source of such income or the manner in which it was received. Petitioner does not deny that an identical amount of money was invested in real estate in 1944, but contends that approximately $11,000 of this amount was paid out of accumulated savings and that the remainder consisted of embezzled funds.

The sole evidence offered with respect to the savings was testimony by petitioner's wife that they had gradually accumulated $11,000, a portion of which was on deposit in their two bank accounts and the remainder of which was kept "at the house." The money in her savings account, estimated at $900, was attached by the Government and therefore was not involved as disputed income. Inasmuch as the taxpayers' counsel conceded that all payments for real estate were made in cash, it would appear that the funds on deposit in petitioner's bank account, approximating $1,400, likewise were not a part of the $26,309.83 used to purchase real estate. Finally, we are unable to accept the casual statement of petitioner's wife that the remaining portion of the alleged savings, apparently in the amount of $8,700, was actually on hand or was in fact used for the purchase of the property. No lock box had been rented prior to the taxable year and it hardly seems reasonable that a married couple maintaining a checking and savings account would keep such a large sum lying around the house.

The taxpayers contend that the balance of the consideration paid for the real estate, or approximately $15,300, was received by peti-

tioner in connection with his black market sugar sales, and further urge that the sums so received and appropriated were in fact money of the company, and the petitioner's taking constituted an embezzlement. Embezzlement, however, is a technical statutory offense which requires strict and convincing proof. No facts have been introduced which would warrant the finding that a specific sum was embezzled by petitioner, and what might at first blush appear to be an admission against interest on petitioner's part may not be so when it is advanced solely to relieve petitioner from paying a tax.

Petitioner was tried and convicted of making false representations on OPA envelopes and aiding and abetting in counterfeiting war ration sugar stamps. It would appear quite probable that the sums in excess of the ceiling price paid to him by the purchasers of sugar were in fact paid for doing the very things for which he was indicted and convicted, which things were done to make available the sugar. Petitioner did something more than merely sell sugar of his employer above the ceiling price. He made use of forged stamps and forged certificates to make the sugar available.

Petitioner relies on *Commissioner* v. *Wilcox*, 327 U. S. 404, and *McKnight* v. *Commissioner*, 127 Fed. (2d) 572, in support of his position. Both of these cases are clear instances of embezzlement, with that fact established, and the court's holdings were that embezzled funds as such were not income. We are not convinced, however, that we have here an embezzlement of the company's funds. Money paid for the securing of sugar by issuing forged ration stamps and making of false certificates does not constitute embezzlement, even though the money is paid in connection with the securing and selling of sugar in the company's name. We sustain the Commissioner's determination of the deficiency.

There remains for consideration the matter of the fraud penalty. While the burden rests on taxpayers to prove that the deficiency in tax as determined was not due, the statute places on the respondent the burden of proving fraud. Because direct and clear-cut proof of fraud is seldom available, it must be established by a full consideration of the records and testimony offered, the appearance and manner of the witnesses, the conduct of the taxpayer, and all conditions and circumstances surrounding the transactions which produced the disputed income.

Respondent offered the testimony of two Government agents who personally traced counterfeit ration stamps representing 521,230 pounds of sugar to the wholesale establishment managed by petitioner. He was subsequently convicted by a Federal District Court, not only of using counterfeit stamps on a wide scale, but also of falsifying the names and addresses of retail buyers in order to acquire additional sugar supplies.

Moreover, the petitioner freely admitted that he surreptitiously received a considerable amount of money in connection with the sales of sugar which he handled, of which no business records were kept. Petitioner's wife did not deny that she was fully aware of these transactions when they occurred.

On this record, we can not escape the definite conclusion that the failure of petitioner to include the disputed income in his 1944 return was deliberate, with a clear intent to evade the tax due. The general atmosphere of his black market operations, his conviction, his personal efforts to escape tax by relying on the commission of another felony, and the other considerations discussed above convince us that fraud was committed. Therefore, the fraud penalty was properly claimed by respondent.

*Decision will be entered for the respondent.*