**Alfred B. CENEDELLA, Defendant, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 4964.

United States Court of Appeals
First Circuit.

Argued June 8, 1955.

Decided Aug. 5, 1955.

Rehearing Denied Aug. 31, 1955.

Alfred B. Cenedella, Milford, Mass., pro se, with whom Richard Maguire, Boston, Mass., Thomas J. Carens, Wellesley Hills, Mass., and Maguire, Roche, Garrity & Maloney, Boston, Mass., were on the brief.

James P. Lynch, Jr., Asst. U. S. Atty., Canton, Mass., with whom Anthony Julian, U. S. Atty., and Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

A jury in the court below found the appellant guilty on all four counts of an indictment charging evasion of income taxes in violation of § 145(b) of the Internal Revenue Code, Title 26 U.S.C. § 145(b), for the four calendar years from 1947 to 1950, inclusive, and the court sentenced him to concurrent terms of imprisonment on each count and on each count to pay a separate fine of $500.

The appellant admitted at the trial that he had understated his income in the joint returns he filed for himself and his wife for each of the years covered by the indictment. His contention was, and is, that his omission of items of income was not willful but inadvertent, or at the most, the result of his or

his secretary's carelessness. However, the number of income items concededly omitted each year, and their gross amounts, clearly warranted the jury in rejecting the appellant's contention and instead concluding that the items were willfully omitted by the appellant in an attempt to evade or defeat his income tax obligations for each of the four years involved. Further elaboration is unnecessary for the appellant only half-heartedly contends that the District Court erred in denying his motions under Criminal Rule 29(a), 18 U.S.C.A., for the entry of a judgment of acquittal on each count of the indictment.

We turn, therefore, at once to the consideration of those matters which the appellant contends entitle him to a new trial.

The appellant was admitted to the Massachusetts Bar in 1910 and he has lived and practiced his profession in his native town of Milford ever since. Throughout his professional life he has been active in civic affairs. He served on the local school committee for over twenty years; he was Town Solicitor of Milford for five years and Town Solicitor for the adjoining town of Mendon for twenty-five years. In addition to holding local office, he served on the Massachusetts Industrial Accident Board from 1930 to 1935 when he resigned to become First Assistant to the District Attorney for Worcester County. He held that office for twelve years and in 1946 he was elected District Attorney. In 1950 he was re-elected for another four-year term at the end of which he retired.

The Government does not contend that the appellant understated his salary as District Attorney during the four years covered by the indictment. Its contention is, and the appellant concedes, that during those years he understated the income he derived from the private practice of the law which he carried on part time during his service as District Attorney. While many omissions of items of income from this source were agreed upon in a series of stipulations entered into by opposing counsel, other omissions alleged by the Government were not, and it undertook to prove these disputed items by documentary evidence and the testimony of witnesses. Two of these disputed items must be considered in some detail. One involves the administration of the estate of Coccavelli and the other a transaction with one Swartz.

The appellant in 1920 was appointed guardian of Vincenzo Coccavelli, an insane person, and he continued to serve in that capacity until 1946 when Coccavelli died intestate leaving an estate of about $35,000 and four heirs residing in Italy. The heirs appointed the appellant their attorney in fact and in October, 1946, the appellant's son, then a law student, was appointed administrator of the Coccavelli estate. The appellant acted as counsel for his son as administrator and as such he apparently handled most if not all transactions involving the estate.

The Government introduced evidence at the trial to show that in 1947 the appellant obtained stock and cash from the Coccavelli estate to the value of over $9,000 which he did not report as income in his return for that or any other year. It showed specifically that in July, 1947 the administrator transferred stock of the estate in the Home National Bank of Milford worth $2,300 to the appellant, and that in the same year, at one time or another and in one way or another, over $7,000 in cash found its way from the estate to the appellant's personal checking account and was subsequently used by him as though it were his own, except for $318.29 which he transmitted by personal check to the heirs in Italy in February, 1948, noting on his check stub "In full Coccavelli Est."

The appellant objected to the introduction of the above evidence on the ground that it was both irrelevant and prejudicial. He said that the evidence was irrelevant because its only tendency was to show that he had embezzled funds from the Coccavelli estate, and in Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, it was held that embezzled money does not constitute taxable in-

come to the embezzler. And he said that the evidence was so highly prejudicial as to prevent the possibility of his having a fair trial not only on the first count of the indictment covering the year 1947, but also on the three remaining counts covering the three succeeding years as well. Nevertheless, the court below overruled the appellant's objection and admitted the evidence on the Government's theory that from it the jury could infer that the appellant had taken the stock and money from the Coccavelli estate in payment for his services as counsel for the administrator and as attorney in fact for the heirs.

When the appellant took the stand in his own defense he admitted that he had received assets of the Coccavelli estate as shown by the Government. He contended, however, that the Home National Bank of Milford stock was not worth $2,300 at the time it was transferred to him, as the Government contended, but was worth only $1,610, and that he took it in payment of his fee for services of $1,500 and to reimburse him for his expenses of $110. He said that of the cash, $2,000 was his son's fee as administrator which was paid directly to him in partial repayment of loans made over past years to his son, and the remainder, amounting to nearly $6,000, got into his personal checking account by mistake and that he spent it inadvertently.

Furthermore, the appellant introduced in evidence the first and final account of his son as administrator of the Coccavelli estate which was filed in the Probate Court for Worcester County on November 24, 1954, and was allowed on the day it was filed at the request of the appellant as attorney in fact for the heirs. This account shows a payment to the appellant on July 17, 1947, of $1,610, consisting of Home National Bank stock, for fees and expenses; a payment of an administrator's fee of $2,000 to the appellant's son on October 22, of that year; and a distribution on February 16, 1948, of $5,725.26 to the appellant for the Coccavelli heirs. The appellant admitted, however, that he did not actually

remit the latter sum to the heirs until December 1954, after the account was allowed, and about eleven months after he was indicted.

The District Court recognized that the Wilcox doctrine did not cover all of the evidence with respect to the Coccavelli estate because of the appellant's claim that part of the money he received from the estate was in payment of fees and expenses. But, at the appellant's earnest request, the court did not charge on the Wilcox rule at all. Instead, the court without objection by the appellant charged the jury that it was not to consider the $5,000 odd taken from the Coccavelli estate as unreported income for the year 1947 if it should find that the appellant did not realize that he had that money in that year, for "then obviously he could not be expected to have reported it," and the jury was not to concern itself with honest mistakes. The jury was also told that on the other hand, if it should find that the appellant had consciously retained some or all of the above sum, in addition to the bank stock, for his professional services as counsel for his son, the administrator, and as attorney in fact for the heirs, then it could find "that what he so took for that purpose was taxable income" which should have been reported in his income tax return for 1947.

The appellant at the trial clearly abandoned his contention based on the Wilcox case and he has not attempted to revive it in his brief. His present contention is that the evidence pertaining to the estate of Coccavelli should have been excluded for the reason that its admission constituted a collateral attack on the decree of the Probate Court for Worcester County allowing the administrator's final account.

We do not brush this contention aside as an afterthought for it was briefly mentioned in passing at the trial. Nor can we treat the contention as applicable only to the first count covering the year 1947 and sustain the judgment without considering it, for although the prison sentences on each count were concurrent

the fines on each count were separate, and furthermore, the appellant contends that the prejudice resulting from the admission of this evidence deprived him of a fair trial on all counts. We find the contention, however, to be wholly without merit.

■ Since the appellant's son was the administrator of the Coccavelli estate, and the appellant himself was not only counsel for his son as administrator but also attorney in fact for the heirs, and as such requested allowance of his son's final account as administrator, it would seem that the appellant, by relying on the judicial allowance of the account as the ground for excluding the evidence of his dealings with the estate's assets, was attempting to lift himself by his own bootstraps. See Wolfsen v. Smyth, decided by the United States Court of Appeals for the Ninth Circuit, May 25, 1955, 223 F.2d 111. However, the decree of the Probate Court as to the amount of the appellant's fee, although perhaps binding on the heirs, is not binding on the Government under the doctrine of *res judicata* for the Government was neither a party, nor the privy of a party, in the accounting proceeding. Moreover, while the decree may adjudicate the amount of the appellant's fee so far as the heirs are concerned, it does not adjudicate, or purport to adjudicate, the appellant's prior dealings with assets of the estate. See Gallagher v. Smith, decided by the United States Court of Appeals for the Third Circuit, June 3, 1955, 223 F.2d 218. That is to say, it does not adjudicate, or attempt to adjudicate, that the appellant did not, some seven years before, take a larger fee than that subsequently allowed and then later abandon his claim to the larger amount and remit the balance to the heirs. In short, the 1954 decree of the Probate Court, while for some purposes fixing the appellant's fee at $1,500 and his expenses at $110, does not determine the question whether or not in 1947 the appellant claimed as of right and took a larger fee which on second thought he later reduced to the amount he finally

claimed and was allowed. See United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560.

We turn now to the Swartz matter.

The Government introduced evidence to show that the appellant had been coexecutor under the will of one Catherine Green; that he had assisted his fellow townsman, landlord and neighbor, Swartz, in negotiating for the purchase of a business block in Milford belonging to that estate, whereby Swartz had been able to purchase the property at a saving of approximately $9,000 or $10,000; and that upon consummation of the sale in October, 1949, Swartz gave the appellant $4,750 in cash which the appellant noted in his diary as a "gift" and never reported as income. It was the Government's contention that from this evidence the jury could properly find that the money received from Swartz was not a "gift" but a payment for valuable services rendered, and so conclude that the appellant ought to have reported the $4,750 as income in the year received.

The appellant admitted that he had done what he could to help Swartz purchase the property from the Green estate and that Swartz had given him $4,750 in cash at the time the transaction was closed. But he contended that the money was a "gift", as he had noted in his diary, and not a payment for services rendered. The issue of fact presented by the foregoing evidence was submitted to the jury under instructions which were not objected to.

We come now to the gist of the appellant's complaint.

The Government summoned Swartz as a witness, and he was present in the courthouse with the other government witnesses for three days during the trial, but he was not called to the stand by either the Government or the appellant. The court in its charge mentioned that Swartz had not appeared in court and told the jury that no inference was to be drawn for or against either party because of his absence. It is conceded that Swartz, if called, would have testi-

fied that he never gave the appellant $4,750, or any other sum, and both the Government and the appellant knew that he would so testify.

 The appellant does not contend that the Government concealed Swartz where he could not be found. Nor does the appellant contend that he was prevented by the Government from finding out what Swartz' testimony would be. His contention is that it was the duty of Government's counsel to put Swartz on the stand and present his testimony to the jury for its consideration, and that the failure of counsel for the Government to do so was highly prejudicial to his cause. The contention is refuted by its statement.

The Government is privileged not to call witnesses in whom it has no confidence and there is little reason to have confidence in Swartz. Nor is it any part of the Government's duty to present evidence for the defense. Moreover, had it put Swartz on the stand, it would have been open to the accusation of prejudicing the jury by impeaching the appellant's credibility, for he had testified categorically that Swartz gave him $4,750, or possibly, as the court below noted, indicating a consciousness on the part of Swartz that he and the appellant had engaged in a shady transaction. At any rate the appellant knew where Swartz was and knew what Swartz would say if he were called to the witness stand. He could have called Swartz had he wanted to, by process if necessary, and his failure to do so cannot be charged against the Government.

 Only one more matter requires specific consideration.

The jury took the case and retired to consider its verdict about 10 o'clock in the morning. At nine o'clock that evening the court called the jury back into the courtroom and in the presence of the appellant and counsel on both sides asked the foreman if there was any prospect of the jury reaching an agreement within the next five or ten minutes. The foreman replied that he did not think

agreement could be reached within quite so short a time, and the court then urged the jurors to reach an agreement if they conscientiously could using language approved by the Supreme Judicial Court of Massachusetts in Commonwealth v. Tuey, 8 Cush. 1.

The following colloquy then ensued:

"The Court: * * * Now, Mr. Foreman, if there is anything in my charge that you would like to have repeated, if there is any subject on which you would like further illumination from the charge or if there is any evidence you would like to hear, I will hand you a pad and you may address any questions to me that you wish, being not just the decision of one of you as to the questions but you should confer briefly among yourselves so that you agree as to what it is that I am being asked.

"The Foreman: Right here, your Honor?

"The Court: Yes, you may. If you prefer to go upstairs and do it, you may do that.

"The Foreman: I don't think that will be necessary, your Honor.

"[Conference between jurors]

"The Foreman: I feel, your Honor, that we are reasonably close to a decision, a verdict.

"The Court: That is fine. That was why I brought you down, to find out whether you were or were not. We will await you, and naturally you may take as long as you feel you should. If you do change your mind and want any questions answered, why, we will be here.

"The Foreman: Thank you."

The jury then retired at 9:03 to return at 9:20 with a verdict of "guilty" on all four counts of the indictment.

The appellant registered no objection to these proceedings at the time. Indeed, through his counsel at least, he appears to have fully acquiesced in all that was done. Now, however, he contends that the court brought improper pressure to

bear on the jury and in effect coerced it into bringing a verdict of guilty. He says that in effect the court asked the jury how it stood numerically with respect to a verdict, which the Supreme Court condemned in Burton v. United States, 1905, 196 U.S. 283, 307, 308, 25 S.Ct. 243, 49 L.Ed. 482, and held to be prejudicial error calling for reversal in Brasfield v. United States, 1926, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345, and also that the court required the jury to reach its verdict in open court, where it was subject to the imponderable but nevertheless pervasive influence of the bailiffs and other court attaches, instead of in the privacy of its jury room.

Again the statement of the contention demonstrates its lack of merit. The trial court did not poll the jury in advance of verdict as in the cases last cited. Instead it merely inquired as to the prospects of agreement to find out if further instructions would be helpful—certainly a reasonable inquiry, for if the jury were on the verge of agreement further instructions would not have been necessary. Nor did the court require the jury to reach its verdict in the courtroom. All that the jury decided in the courtroom was that it did not desire any further instructions, and, having decided that, it retired to its room to consider the case further, returning several minutes later with a verdict. We see no error in the way the court handled the jury.

The appellant further contends that the court below fell into several other serious errors affecting his substantial rights which we should notice under Criminal Rule 52(b) even though they were not brought to the attention of the court at the trial. We have examined these assertions of error and found them all without merit. We shall not mention them in detail. It will suffice to say that the record discloses a trial fought hard but cleanly by counsel on both sides and conducted from the bench with scrupulous regard for the appellant's rights.

The judgment of the District Court is affirmed.