MARVIN E. ESSRIG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Essrig v. Commissioner
Docket No. 1114-73
United States Tax Court
T.C. Memo 1975-192; 1975 Tax Ct. Memo LEXIS 179; 34 T.C.M. (CCH) 827; T.C.M. (RIA) 750192; June 18, 1975, Filed Jeremy P. Ross, for the petitioner. Robert J. Shilliday, Jr., for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: The respondent determined the following deficiencies in petitioner's federal income taxes and additions thereto under section 6653(b), [1] I.R.C. 1954, for the calendar years 1966, 1967 and 1968: Sec. 6653(b) Addition Year
Deficiency
To Tax
1966
$ 9,482.79
$ 4,741.39
1967
19,255.05
11,483.25
1968
60,881.53
34,076.36 The only issues [2] for decision are whether petitioner's withdrawals of funds from the Tampa Bay Bank under the facts of this case constitute taxable income and, if so, whether his omissions of such funds from his returns for the years in question were due to fraud within the intendment of section 6653(b). *180 This case was submitted pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Consequently, all of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. At the time of filing the petition herein petitioner maintained his legal residence in Tampa, Florida. Petitioner and his wife, Cecile W. Essrig, filed joint federal income tax returns for the calendar years 1966, 1967 and 1968 with the district director of internal revenue for the district of Florida. During the taxable years 1966, 1967 and 1968, petitioner was a director, president, and stockholder of the Tampa Bay Bank, Tampa, Florida, a state bank (hereinafter referred to as the Bank). The Bank during this period was doing business in the Tampa, Florida area as an institution insured by the Federal Deposit Insurance Corporation. During the taxable years 1966, 1967, and 1968, petitioner, using his position as a director and president of the Bank, withdrew in cash from the Bank the respective sums of $33,500, $60,000 and $124,500, which amounts were owned by the Bank prior to the withdrawals and which amounts *181 were in petitioner's possession and control by virtue of petitioner's position with the Bank. In order to conceal the withdrawals and in an attempt to deceive any person authorized to examine the records of the Bank, petitioner negotiated certain demand promissory notes to the Bank in the amounts of the withdrawals. Although these notes were made and executed by petitioner, the names of the makers of the notes, which petitioner placed and signed thereon, were other than petitioner's own name even though petitioner had no authority to act on behalf of these individuals concerned. The notes referred to above contain the following information: Made in the
Balance Name of
Date of Note
Face Amount
12/31/68
Leon J. Bishop
6-23-66
$33,500.00
$33,500.00
Robert Graham
6-16-67
60,000.00
60,000.00
J. A. Waterman
2-05-68
32,000.00
32,000.00
Joe A. Potts
8-12-68
65,000.00
65,000.00
Leon J. Bishop
10-14-68
27,500.00
27,500.00
$218,000.00
$218,000.00
Each of the persons whose names appeared on the notes resided, at the time of the respective note deliveries by petitioner to the Bank, in the Tampa Bay area and held a position of some prominence *182 within that community. Petitioner was personally acquainted with each and was the son-in-law of J. A. Waterman. Further, the Bank had knowledge of such individuals through various depository and/or lending relationships established by each prior to the delivery of the notes. The individuals in whose names the notes were made had no knowledge of the existence of the notes and the withdrawals made by petitioner. On the dates of the withdrawals, petitioner gained dominion and control of the withdrawn funds and because the notes delivered to the Bank were in the names of prominent individuals, petitioner continued his dominion and control over the withdrawn funds through the years 1966, 1967, and 1968. During these three years petitioner made no repayments to the Bank of the amounts so withdrawn, but he did make timely payment of interest charges accruing against such amounts under the terms of the subject notes. These interest payments were not claimed as interest deductions on petitioner's 1966, 1967, or 1968 income tax returns. Petitioner did not record the withdrawn funds on his books and records and failed to include the withdrawn funds in his gross income for the taxable years *183 1966, 1967, and 1968. For those years petitioner's reported income was less than the amount of the funds he withdrew from the Bank in each of those years. Prior to 1969, petitioner never advised any other employee or representative of the Bank that he was the one who had made, executed, and signed the notes referred to above rather than the individuals whose names appeared thereon as makers. By concealing the actual identity of the individual withdrawing the fund, petitioner was able to retain possession of these funds until 1969 when he disclosed that the notes had been made by him. On February 6, 1970, petitioner plead guilty to being an officer, director, and president of the Bank, which was insured by the Federal Deposit Insurance Corporation, who wilfully and knowingly and with intent to injure and defraud the Bank did embezzle, abstract, purloin, and wilfully misapply and convert to his own use, the sum of $27,500, on October 14, 1968, of the monies, funds, and credits entrusted to the custody and care of the Bank which had come into his possession and under his care by virtue of his position as an officer of the Bank, all in violation of 18 U.S.C. sec. 656. *184 On February 27, 1970, petitioner was adjudged to have been convicted upon his plea of the offense of being the president of the Bank who wilfully did embezzle and misapply monies and funds of the Bank in the sum of $27,500 in 1968 in violation of 18 U.S.C. sec. 656. Marvin E. Essrig, the petitioner, is the same person who was the defendant in the criminal case of United States of America v. Marvin E. Essrig, No. 69-107-CR-T (M.D. Florida, Filed March 16, 1970). The respondent is a party in privity with the United States of America, the prosecuting party in the aforementioned criminal case in which the petitioner herein was the defendant. Among the issues of fact presented and determined in the aforenoted criminal case was whether Marvin E. Essrig was guilty of embezzlement of bank funds in 1968. The court there decided that the funds withdrawn in 1968 were embezzled. During the taxable years 1967 and 1968, petitioner made the following large deposits in his checking accounts at the Bank: Account
Remarks on Date
Number
Deposit
Deposit Slip
June 19, 1967
11-973-9
$33,500.00
None
Aug. 28, 1967
11-973-9
17,032.37
None
Aug. 19, 1968
11-973-9
47,000.00
Currency
Oct. 15, 1968
11-973-9
22,380.00
None
Dec. 10, 1968
11-973-9
88,000.00
Proceeds of Loan [3]
Aug. 19, 1968
10-162-2
18,000.00
Cash
*185 In the year 1969, petitioner made payments to the Bank of $218,000 in satisfaction of the amounts previously withdrawn during the years 1966, 1967 and 1968, together with an additional payment of $35,000 which petitioner withdrew from the Bank on February 3, 1969. In the notice of deficiency addressed to petitioner respondent determined, among other adjustments, that during the years 1966, 1967 and 1968, petitioner received "other income", taxable under section 61, from the Bank in the amounts of $33,500, $60,000 and $124,500, respectively, which was not reported on his returns. Respondent further determined that all or part of the underpayments of tax required to be shown on the returns for the years 1966, 1967 and 1968 were due to fraud. The first issue for decision requires our determination of whether withdrawals of funds by petitioner in the years 1966, 1967 and 1968 from the Bank constitute income taxable to him in those years. In order to conceal the withdrawals petitioner negotiated notes to the Bank in the names of prominent individuals in the Tampa Bay area. Petitioner had no authority to act *186 on behalf of the persons whose names he used on the notes, nor did they know of the existence of the notes and the withdrawals made by him. Whether such withdrawals under the above mentioned circumstances constitute embezzlement or just plain misappropriation, it is clear that this case falls directly within the reasoning of James v. United States,366 U.S. 213 (1961) with the result that the withdrawals in question constitute taxable income in the years in which petitioner had command over and complete dominion of the funds. See also, Moore v. United States,412 F. 2d 974 (5th Cir. 1969); and Rozelle McSpadden,50 T.C. 478 (1968). We think the following language from Moore v. United States,supra, at 979-980, is of particular significance in this case: The reasoning of James is that while an embezzler has a legal obligation to repay and may intend to repay, his legal obligation and intent are not the same as an actual agreement between lendor and borrower entailing "consensual recognition" of an obligation to repay and exact conditions of repayment. * * * The absence of a consensual agreement between the *187 party providing the money and the party receiving it is fatal to the Trustee's contention that the money should be excluded from gross income on a loan theory. Therefore, it must be treated as income. On brief, petitioner has not questioned the result if we apply the rule contained in James v. United States. Petitioner, however, requests rather eloquently that we reconsider that case on the basis of its dissent. The principle enunciated by the majority in James v. United States is now well-settled law and, in any case, it is not our province to overturn such a decision. Our personal views on the issue are of no moment in these circumstances. The second issue involved herein is whether petitioner's omissions of the withdrawn funds from his income tax returns for the years 1966, 1967 and 1968 require extraction of the addition to tax provided by section 6653(b). [4] Since there can be no question that the withdrawn funds, concededly received by petitioner, were income taxable to petitioner in the years of withdrawal, the sole question to be decided is whether the consequent underpayment of tax by petitioner in each of the years 1966, 1967 and 1968 was due to fraud. *188 The burden of proof in this matter is on respondent to prove by clear and convincing evidence that some part of the deficiency in each year is due to fraud with intent to evade tax. Arlette Coat Co.,14 T.C. 751, 756 (1950). However, we recognize that, because direct or clear-cut proof of fraud is seldom available, a taxpayer's intention usually must be gleaned from all the facts and circumstances in the record and the inferences to be drawn therefrom. Luerana Pigman,31 T.C. 356, 370 (1958); M. Rea Gano,19 B.T.A. 518, 532 (1930). In the instant proceeding we think respondent has presented a prima facie case of fraud, which, we note, there has been no attempt to refute. Because petitioner was the president and a director of a bank in a large city, and obviously an intelligent businessman, we are compelled to conclude that he did know that the withdrawn funds constituted taxable income. Petitioner's actions in taking these funds occurred some 5, 6 or 7 years after the decision in James v. United States,supra, and we consequently believe that, in view of his position as a banker, he must be deemed to have *189 been aware of the holding in that case and that any possible gloss on the law remaining from the holding of Commissioner v. Wilcox,327 U.S. 404 (1946) must have been removed. Cf. George C. McGee,61 T.C. 249, 260-61 (1973), on appeal (5th Cir., April 9, 1974). Among the other facts from which we think petitioner's intent to evade taxes can be inferred are his failure to record the withdrawn funds in his books and records and the discrepancies of 100 percent or more between real and reported income for 3 successive years. See Arlette Coat Co.,supra, at 756. The receipts in question were of such magnitude as to preclude the possibility of their omission by oversight. While we believe that petitioner's failure to report the income received and his cover up at the Bank were no doubt partly due to his desire to avoid detection of his crime, we conclude that such actions on his part were due in some part to an attempt to evade taxes. Thus, finding some part of the underpayment of tax in each year was due to fraud, the additions to tax under section 6653(b) must be sustained. Decision will be entered for Respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended and as applicable to the taxable years involved, unless otherwise indicated. ↩
2. In his petition, petitioner also assigned as error respondent's disallowance of a claimed farm loss deduction for the year 1968. Since there was no mention of any facts relating to such an issue in the stipulation of facts and since no argument concerning the claimed deduction was presented on brief by petitioner, we deem this issue conceded.↩
3. This was a bona fide loan negotiated by petitioner with the Bank.↩
4. SEC. 6653. FAILURE TO PAY TAX (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.↩